COLUMBUS EDUCATION ASSOCIATION, APPELLEE, *v.* ARCHULETA ET AL., APPELLANTS.

(No. 85AP-523 — Decided January 28, 1986.)

*Cloppert, Portman, Sauter, Latanick & Foley, Frederic A. Portman* and *Susanne R. Blatt,* for appellee.

*Portugal & Singer* and *Lawrence A. Singer; National Right to Work Legal Defense Foundation, Inc.* and *Glenn M. Taubman,* for appellants.

MOYER, J. This matter is before us on the appeal of defendants-appellants, sixty-eight teachers ("teachers"), employed by the Columbus Board of Education ("board"), from summary judgment in favor of plaintiff-appellee, Columbus Education Association ("union").

The union filed suit February 14, 1984 against the teachers, members of the bargaining unit represented by the union, to recover agency fees claimed to be owed to the union.

The trial court granted the union's motion for summary judgment on May 2, 1985, declaring that the collective bargaining agreement between the union and the board is constitutionally valid and enforceable, and that the teachers' defenses concerning agency fee collection and rebate procedures were premature and anticipatory.

The teachers appealed from that judgment on June 16, 1985.

The teachers, members of the bargaining unit but not the union, are required by the contract to pay an agency fee equivalent in amount to the monthly dues paid by the union members.

The union engages in a dual role, providing collective bargaining, contract administration, and grievance procedure functions, while also engaging in lobbying, endorsement, and support of political, ideological, and social issues. Non-member teachers who dissent from the latter functions have a contractual right to a refund of that portion of agency fees which would otherwise be applied to support ideological, social, and political issues unrelated to collective bargaining. The contractual right has been accorded to dissenters to protect their constitutional right of freedom of association. They wish to disassociate themselves from views with which they disagree.

The dissenting teachers claim that their due process rights and First Amendment rights are violated by the rebate procedure which requires them to pay a higher fee than the union can ultimately and legitimately collect as an agency fee. The annual amount of each agency fee sued upon is $276.90.

The teachers claim, further, that their right to due process of law and principles of fairness required that the trial court examine the rebate procedure before they may be forced to pay agency fees. As the trial court noted, "[t]he handling of the agency fees [*sic*] crucial to the determination of the issues herein."

The union successfully argued below, as a threshold issue, that the teachers cannot challenge their rebate system until they first submit payment and receive a refund. Only then may they challenge the amount of the refund and the rebate procedure. The teachers argue that the court below stopped short of both its duty to examine the "bona fides" of the rebate system and its further duty to make a prior determination of the net amount legitimately due the union as an agency fee. The teachers assert the following four assignments of error in support of their appeal:

"I. The trial court erred in granting summary judgment because there were material issues of fact which remained in dispute and the plaintiff was not entitled to judgment as a matter of law.

"II. The trial court erred as a matter of law in granting summary judgment because in doing so it abdicated its judicial authority in favor or [*sic*] a private non-judicial 'arbitral' body

created and controlled by one of the parties. This is a violation of due process under both the U.S. and Ohio Constitutions.

"III. The lower court erred as a matter of law when it refused to hear the constitutional defenses of the teachers. 'Due course of law' under the Ohio Constitution and 'due process of law' under the federal constitution require that the constitutional defenses alleged in the answer be heard before judgment is entered.

"IV. The lower court erred as a matter of law by requiring exhaustion of the internal union rebate procedure without even scrutinizing that procedure to ensure its fairness. Material issues of fact remained to be decided concerning the *bona fides* of the 'rebate' system."

This case arises under Ohio law, as a "State or political subdivision thereof"; *e.g.,* boards of education are statutorily excluded from the category of "employers" subject to the National Labor Relations Act, Section 152(2), Title 29, U. S. Code.

States are therefore free to independently regulate the labor relations between public employers and employees. Consistent therewith, Ohio passed the Ferguson Act, formerly R.C. 4117.01 through 4117.05, which prohibited strikes by public employees. No other major legislation in the area of labor relations was passed until 1983 when the General Assembly abolished the provisions of the Ferguson Act and enacted a more comprehensive labor statute, Am. Sub. S.B. No. 133 (140 Ohio Laws, Part I, 336). The effective dates of that statute (most sections effective April 1, 1984) post-date the effective date of the collective bargaining agreement at issue here, which was effective September 1, 1983. Consequently, otherwise relevant provisions of Am. Sub. S.B. No. 133 are not applicable to this case.

Beyond the provisions of the Ferguson Act, the few parameters addressing the particulars of collective bargaining and labor relations between public employers and employees are supplied by Ohio case law and, even though federal labor law doctrines do not control cases arising under Ohio law, further guidance is provided by federal labor law decisions addressing constitutional issues. ·

Before passage of Am. Sub. S.B. No. 133, the Ohio Supreme Court determined that Ohio's boards of education were impliedly authorized to enter into collective bargaining agreements with employee representatives. *Loveland Edn. Assn.* v. *Loveland Bd. of Edn.* (1979), 58 Ohio St. 2d 31 [12 O.O.3d 17], and *Civil Service Personnel Assn.* v. *Akron* (1976), 48 Ohio St. 2d 25 [2 O.O.3d 98]. The power to do so, however, was discretionary. Public employers were under no constitutional, statutory, or common-law duty to bargain with or recognize employee representatives. Collective bargaining agreements or recognition agreements, however, may not conflict with the duties and responsibilities imposed by law upon public employers. *Loveland Edn. Assn.* v. *Loveland Bd. of Edn., supra,* syllabus.

In the absence of an express statutory command authorizing boards of education to engage in collective bargaining agreements with teachers, boards of education have done so voluntarily, acting within their discretionary authority to: manage and control public schools (R.C. 3313.47); enter into contracts (R.C. 3313.17) and, specifically, written contracts for the employment of all teachers (R.C. 3319.08); and make rules and regulations as are necessary to govern itself and its employees (R.C. 3313.20). Public employees, for their part, have been permitted to organize into unions as an exercise of their First and Fourteenth Amendment rights of association.

The absence of a requirement for

public employers to enter into collective bargaining agreements is also accompanied by a complete absence of legislative policy to that end. In contrast, under federal labor law, *i.e.,* the National Labor Relations Act, Sections 151-169, Title 29, U.S. Code, and the Railway Labor Act, Sections 151-188, Title 45, U.S. Code, statutory authority to enter into collective bargaining agreements reflects a strong policy, upheld by the courts, favoring industrial peace. Policy statements, however, may be inferred from a board of education's decision to enter into a collective bargaining agreement. *Loveland Edn. Assn.* v. *Loveland Bd. of Edn., supra,* at 35.

To address issues arising from the collective bargaining relationship, in the absence of statutory provisions or strong legislative policy, courts have relied upon the rules of equity to guide their interpretation of collective bargaining agreements. *Civil Service Personnel Assn.* v. *Akron, supra,* at 28; *Ohio Assn. of Public Sch. Employees* v. *Bexley Bd. of Edn.* (1982), 2 Ohio App. 3d 45, 46.

In *Civil Service Personnel Assn.* v. *Akron, supra,* at 27, the court followed "broad equitable principles of fairness" to enjoin the city of Akron from entering into a collective bargaining agreement with an existing union until all employees of the community of interest determined their bargaining agent by election. "Parties ordinarily are not bound to contract. However, once they voluntarily do so, it is not extraordinary for them to be bound by equitable principles." *Id.* at 28. This court found the duty of "fair play" prevented a board of education from abusing its discretion by recognizing an employee organization which represented only a minority of employees over one representing a majority of employees. *Ohio Assn. of Public Sch. Employees* v. *Bexley Bd. of Edn., supra,* at 46. Parties to a collective bargaining agreement are presumed to be acting in good faith. *Struthers City Schools Bd. of Edn.* v. *Struthers Edn. Assn.* (1983), 6 Ohio St. 3d 308, 311.

Thus, the present case arises within this rather loose framework of state decisional law wherein public employers have the discretionary option, but not the duty, to engage in collective bargaining. More than legislative policy, equity guides the bargaining process, the end result of which is a contract which orders the relationship in harmony with the board's legal duties and responsibilities.

To facilitate our analysis, the assignments of error will be discussed in the order: third; second; fourth; and first.

In their third assignment of error, defendants argue that they were denied their due process rights under the United States and Ohio Constitutions because the trial court refused to hear constitutional issues raised in their answer as defenses. As a result, defendants allegedly were deprived of property without due process of law.

Defendants, in their answer, first objected to payment of any agency fee under a collective bargaining agreement to which they have not consented, and which they consider to be an "adhesion contract," depriving them of liberty and property. Second, they also objected to any use of the agency fee to support political, ideological, and social causes unrelated to negotiating and administering the collective bargaining agreement, such uses violating their constitutional rights guaranteed under the United States and Ohio Constitutions — specifically, the freedom of speech and due process guarantees. Third, defendants noted that the burden is on the plaintiff to prove the legitimacy of those expenses ultimately allowed as the agency fee and argued that the rebate scheme is inherently biased and creates a non-neutral forum, in violation of their due process rights. Resort to the rebate system, they claim, is "illegal forced

association" in violation of First Amendment rights to free association.

Contrary to the defendants' assertion, the trial court did not fail to address the issues raised in defendants' answer.

In answer to defendants' first argument, the trial court upheld the constitutionality of a non-union member's paying agency fees, applying the decision of the United States Supreme Court in *Abood* v. *Detroit Bd. of Edn.* (1977), 431 U.S. 209, adopted summarily by the Ohio Supreme Court in *Jefferson Area Teachers Assn.* v. *Lockwood* (1982), 69 Ohio St. 2d 671, fn. at 672 [23 O.O.3d 543]. Both decisions permitted assessment and collection of agency fees insofar as they support the union's collective bargaining activities.

Addressing the defendants' second argument raised in support of their third assignment of error, the trial court discussed the holding of *Ellis* v. *Bhd. of Ry., Airline & Steamship Clerks* (1984), 466 U.S. 435, which held that, once collected, agency fees from dissenting nonmembers must not be used to support the union's political, ideological, or social causes, to protect the First Amendment rights of dissenters. The trial court found the union's rebate procedure, utilizing an interest-bearing escrow account, to be consistent with remedies suggested in the United States Supreme Court's opinion in *Ellis*.

The trial court answered the defendants' final arguments, that the burden to prove the legitimate agency expenses is on the plaintiff and that the union's procedures are inherently biased, by finding that:

"* * * [A]ny complaint by Defendants regarding the [rebate] procedure is premature and anticipatory in nature, and that a court would only be speculating and entertaining conjecture as to the appropriateness and validity of the above described rebate procedure.

"* * *

"* * * [T]he Sections of the subject contracts which have been challenged herein are declared to be constitutionally valid and enforceable * * *."

Therefore, because the trial court found defendants' challenges to the rebate procedure to be premature, further analysis of the rebate procedure became irrelevant and unnecessary. Accordingly, defendants' third assignment of error is overruled.

The second and fourth assignments of error raise related issues and will be considered together.

The second assignment of error claims that the trial court "abdicated its judicial authority," in violation of defendants' due process rights under the Ohio and United States Constitutions, by declining to determine the validity and propriety of the rebate procedure and by referring the present dispute to that procedure.

The trial court recognized that this case presented a question concerning the requirement for an exhaustion of remedies. The resolution of that question was not "abdication," but a reasoned exercise of judicial authority. Further, the dispute was not referred to the rebate procedure, but, rather, the court deferred adjudication until after the procedure was used.

The trial court found that the defendants must pursue their contractual remedy first, by paying the agency fee and subjecting themselves to the rebate procedure, after which the amount paid and propriety of the procedure determining same could be challenged.

The fourth assignment of error specifically attacks, as a matter of law, the finding that the teachers must exhaust the rebate procedure without the court's first scrutinizing its fairness. Defendants also argue material issues of fact regarding the "bona fides" of the rebate system remain undecided.

The essential issue raised by these two assignments of error is whether the

defendants must first exhaust the contractual remedy of the rebate procedure or whether due process protections or principles of equity permit them to challenge the rebate procedure on its face.

We hold, for the reasons elaborated below, that defendants may mount a facial challenge to the rebate procedure.

The exhaustion of contractual remedies is a doctrine not strictly required in this case as a matter of law. It is not required by statute for contracts of this type.

In *Abood, supra,* at 242, the United States Supreme Court observed:

"* * * In view of the newly adopted Union internal remedy, it may be appropriate under Michigan law, even if not strictly required by any doctrine of exhaustion of remedies, to defer further judicial proceedings pending the voluntary utilization by the parties of that internal remedy as a possible means of settling the dispute.* * *"

*Toledo Federation of Teachers* v. *Gibney* (Feb. 3, 1984), Lucas App. No. L-83-303, unreported, citing *Abood, supra,* also required dissenting teachers to first resort to the rebate procedure before seeking judicial review. The court first, however, reviewed the rebate procedure for due process considerations, and then found that the rebate procedure was "not patently unreasonable."

In the present case, the court below followed the reasoning and finding in *Toledo Federation of Teachers* v. *Gibney, supra,* but without reviewing in detail the rebate procedure, holding: "* * * [l]ikewise, Defendants should pursue their contractual remedies first." It is apparent, therefore, that the exhaustion of remedies required by the trial court is a matter of discretion, not a matter of law. We find, under the circumstances of this case, that that requirement is an abuse of discretion, as it violates the due process rights of the defendants.

Boards of education are empowered by statute to adopt such rules and regulations as are necessary to carry out their statutory duties, but, in doing so, they may not infringe constitutional rights. Unions representing a majority of teachers are permitted to bargain on behalf of the entire bargaining unit, including those teachers who are not members of the union, and to a degree can deprive the minority of liberty and property interests. In so doing, the union is presumed to be acting on behalf of all of its members. However, the receipt of an objection letter changes the presumption that the union acts on behalf of the dissenting teacher in matters outside the scope of collective bargaining, contract administration, and grievance procedures.

Arguably, therefore, a dissenter's objection letter also causes the rebate procedure to fall outside the scope of collective bargaining representation. However, because it seeks to settle an "intra-unit" dispute, not a typical employee-employer grievance, the authority to incorporate a rebate procedure in the collective bargaining agreement falls within the board's power to govern its employees.

Whether the teacher pays the agency fee first and objects, or objects before paying the fee, upon objection, dissenting teachers have invoked the due process protections afforded the assertion of their First Amendment rights. Rebate procedures seek to implement those protections for dissenters. It is not inconsistent, therefore, to hold that the teachers are not required to endure and exhaust the contractual remedy created for them by others, but may reject and refuse that procedure and first subject the procedure to a facial challenge of its fairness and constitutional validity.

Absent strong legislative policy to the contrary, a rebate remedy, such as plaintiff has afforded defendants, must be subjected to constitutional scrutiny

before being applied when dissenting teachers object to its fairness on the ground that it violates their First Amendment rights.

In *Abood, supra,* exhaustion of remedies was not required as a matter of law, but seemed "appropriate under Michigan law." *Id.* at 242. However, the framework of statutory law and legislative policy favoring collective bargaining present in both *Abood, supra,* and *Ellis, supra,* are missing in this case.

*Abood, supra,* arose within the scope of a Michigan statute authorizing union representation of local governmental employees under agency shop arrangements. *Ellis, supra,* arose within the framework of the Railway Labor Act, *supra.* This case arises under Ohio law consisting of a loose framework of decisional law, outlined above. The absence of legislative enactments in the area of public sector collective bargaining reflects the absence of an express governmental interest. The Ohio Supreme Court embraced the holding of *Abood, supra,* in *Jefferson Area Teachers Assn.* v. *Lockwood, supra,* without discussion. The only governmental interest or policy which may be thrown in the balance may be inferred from the board's discretionary decision to enter into a collective bargaining agreement with the union. While such an action is entitled to some deference, inferences therefrom do not have the weight afforded policy decisions which motivate legislative enactments.

"* * * [B]y allowing the union shop at all, we have already countenanced a significant impingement on First Amendment rights. * * * 'To be required to help finance the union as a collective bargaining agent might well be thought * * * to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit.' * * * [Citing *Abood, supra,* at 222.] It has long been settled that such interfer-

ence with First Amendment rights is justified by the governmental interest in industrial peace. * * *" *Ellis, supra,* at 455-456.

The policy behind the payment of agency fees is that they eliminate the threat to industrial peace otherwise presented by "free riders," non-union members of the bargaining unit who would obtain all the benefits but bear none of the burdens of unionization.

The significant infringement on First Amendment rights noted in *Abood, supra,* and *Ellis, supra,* has been justified by the governmental interests in industrial peace. Although "[t]he differences between public- and private-sector collective bargaining simply do not translate into differences in First Amendment rights * * *," *Abood, supra,* at 232, a very real difference exists in this case with respect to the overriding governmental interests.

We are, therefore, reluctant to find, absent strong legislative policy or demonstrated governmental interest, that defendants should not be accorded every opportunity consistent with principles of fairness and due process to protect their liberty and property interests when required to pay agency fees which include a component supporting political, ideological, and social causes unrelated to the union's role as a collective bargaining agent.

Consistent with the role of equity in public sector collective bargaining under Ohio law, the burden of proving allowable expenses charged as an agency fee is on the union, not the employees. *Abood, supra,* at 239-240, fn. 40. As explained in *Bhd. of Ry. & Steamship Clerks* v. *Allen* (1963), 373 U.S. 113, 122:

"Since the unions possess the facts and records from which the proportion of political to total union expenditures can reasonably be calculated, basic considerations of fairness compel that they, not the individual employees, bear the

burden of proving such proportion. * * *"

Under the rebate plan outlined in affidavits in support of plaintiff's motion for summary judgment, the union chooses an independent auditor who is to determine amounts properly charged as the agency fee in accordance with applicable state and federal law. The rebate procedure must continue to require the union to prove to the auditor the costs related to collective bargaining. The union may not create a rebate procedure which mitigates its burden of proof. The union, as collective bargaining representative, continues to owe a duty of fairness to its unit members if it expects the rebate procedure to be utilized at all. The board, in its management role, must provide a rebate procedure which does not infringe the teachers' constitutional rights to due process of law.

The challenge to the rebate procedure on its face should ensure fair treatment of dissenters by providing for: the use of an appropriate test of expenditures; the proper allocation of the burden of proving those expenditures; and an opportunity for dissenters to make objections, obtain a hearing thereon, appeal determinations made, and obtain independent review of the procedure and its results.

The test for determining which expenses may be charged as an agency fee was set forth in *Ellis, supra,* at 442:

"* * * [T]he test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.* * *"

Accordingly, the fourth assignment of error is sustained and the second assignment of error is overruled in part and is sustained insofar as the trial court refused to determine, prima facie, the validity and propriety of the rebate procedure, and thus violated the teachers' rights to due process of law.

The first assignment of error argues that summary judgment was improperly granted because material issues of fact remain in dispute and the plaintiff was not entitled to judgment as a matter of law.

Civ. R. 56(C) states, in pertinent part:

"* * * Summary judgment shall be rendered forthwith if * * * there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a matter of law.* * *"

Our disposition of the second and fourth assignments of error indicates issues of fact concerning the fairness and constitutionality of the rebate procedure remain, and exhaustion of contractual remedies was not required as a matter of law. Plaintiff, therefore, was not entitled to summary judgment.

Defendants make a further argument that a material issue of fact remained unresolved in the trial court, in that the share of the union's costs for collective bargaining for the 1983-1984 school year should have been determined.

Neither the holdings in *Ellis, supra,* nor *Abood, supra,* nor the principles of equity require such a determination predicate to collection of an agency fee. As a practical matter, such a determination prior to the passing of the school year is impossible. Although costs may be estimated prior to collection of agency fees, actual costs cannot be known until the end of the school year. If the entire rebate system was based upon prior determination of costs based upon previous years' budgets, overpayments and underpayments of agency fees would occur from year to year. It would permit dissenters' funds to be improperly used in some years and cause union members to subsidize non-member dissenters in other years. Thus, the intent of the rebate system to protect First

Amendment rights of both dissenters and the union majority would be defeated. These problems would be emphasized if more than *de minimis* variations were to occur from year to year in the proportions spent on political and collective bargaining activities. Thus, the determination of the amount ultimately owed as an agency fee need not be determined prior to its collection.

Accordingly, the first assignment of error is sustained in part and overruled in part.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

REILLY, P.J., and McCORMAC, J., concur.