THE STATE, EX REL. BROWN, APPELLEE, *v.* MILTON-UNION EXEMPTED VILLAGE BOARD OF EDUCATION ET AL., APPELLANTS.

[Cite as State, ex rel. Brown, *v.* Milton-Union Exempted Village Bd. of Edn. (1988), 40 Ohio St. 3d 21.]

(No. 87-1684—Submitted September 8, 1988—Decided December 7, 1988.)

*Snyder, Rakay & Spicer* and *Peter J. Rakay,* for appellee.

*Jeffrey W. Welbaum,* prosecuting attorney, and *Thomas G. Petkewitz,* for appellants.

WRIGHT, J. The ultimate issue in this case is whether Brown is entitled to a writ of mandamus directing the board to award her a retroactive continuing teaching contract and back pay. For the reasons stated below, the court of appeals' decision issuing the writ is affirmed in part and reversed in part.

I

We must first address whether or not appellee is to be regarded as a "teacher" for purposes of determining her rights under the educational employment laws of this state. Appellants argue that appellee was employed as a "teacher" only for the 1980-1981 school year within the meaning of these laws, and that for all other school years her status was that of a "tutor" as determined in the Master Contracts. The court of appeals rejected this argument of appellants, and we agree since R.C. 3319.09(A) defines a "teacher" as:

"* * * [A]ll persons certified to teach and who are employed in the public schools of this state as instructors, principals, supervisors, superintendents, or in any other educational position for which the state board of education requires certification including persons having a certificate issued pursuant to sections 3319.22 to 3319.31, inclusive, of the Revised Code and employed in an educational position, as determined by the state board of education, under programs provided for by federal acts or regulations and financed in whole or in part from federal funds, but for which no certification requirements for the position can be made under the provisions of such federal acts or regulations."

Brown's status as a "teacher" is obviously within the meaning of this statute. The term "teacher" is broadly defined and includes all "instructors." Other "tutors" have been found to be teachers as defined in this statute. See *Kehoe* v. *Brunswick Bd. of Edn.* (1983), 24 Ohio App. 3d 51, 52, 24 OBR 103, 105, 493 N.E. 2d 261, 263. Moreover, this court has consistently held that the Teacher Tenure Act is to be liberally construed in favor of teachers. See, *e.g., State, ex rel. Rodgers,* v. *Hubbard Bd. of Edn.* (1984), 10 Ohio St. 3d 136, 138, 10 OBR 458, 459, 461 N.E. 2d 1308, 1310; *State, ex rel. Voss,* v. *Northwest Bd. of Edn.* (1981), 66 Ohio St. 2d 274, 277, 20 O.O. 3d 267, 269,

421 N.E. 2d 516, 518; *State, ex rel. Bishop,* v. *Mt. Orab Bd. of Edn.* (1942), 139 Ohio St. 427, 439, 22 O.O. 494, 499, 40 N.E. 2d 913, 919.

We also find that notwithstanding appellants' argument to the contrary, the parties themselves apparently regarded appellee as a "teacher." None of Brown's employment contracts used the word "tutor," and each was titled a "teacher's" contract. Appellants admitted Paragraph 1 of appellee's complaint which stated that she had been employed by the board "under a written *teaching* contract to *teach* more than 120 days per year since the 1980-1981 school year." (Emphasis added.)

## II

We must now determine the merits of Brown's claims to a retroactive continuing contract and back pay. Her claim to a continuing contract is founded on R.C. 3319.11, which provides in pertinent part:

"Teachers eligible for continuing service status in any school district shall be those teachers qualified as to certification, who within the last five years have taught for at least three years in the district * * *.

"Upon the recommendation of the superintendent that a teacher eligible for continuing service status be re-employed, a continuing contract shall be entered into between the board and such teacher unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent. The superintendent may recommend re-employment of such teacher, if continuing service status has not previously been attained elsewhere, under a limited contract for not to exceed two years, provided that written notice of the intention to make such recommendation has been given to the teacher with reasons directed at the professional improvement of the teacher on or before the thirtieth day of April, and provided that written notice from the board of education of its action on the superintendent's recommendation has been given to the teacher on or before the thirtieth day of April, but upon subsequent re-employment only a continuing contract may be entered into. If the board of education does not give such teacher written notice of its action on the superintendent's recommendation of a limited contract for not to exceed two years before the thirtieth day of April, such teacher is deemed re-employed under a continuing contract at the same salary plus any increment provided by the salary schedule. * * *"

Appellee contends that she became eligible for a continuing contract at the latest in April 1985, having obtained the necessary certification and having taught for at least three of the preceding five years in the school district. Thus, according to appellee, as of April 1985 the board had three options under R.C. 3319.11: (1) not renew her teacher's contract, (2) grant her a continuing contract, or (3) extend to her a limited contract not to exceed two years with written notice of reasons directed at her professional improvement. Since the board failed to exercise any of these options, but instead offered her a limited contract in April 1985 and again in April 1986, Brown asserts that she should be deemed reemployed under a continuing contract.

Appellants' contention is that appellee's right to a continuing contract is governed not by R.C. 3319.11 but rather by the Master Contract executed by the board and the Milton-Union Education Association. Section 1, Article III of the 1984-1986 Master Contract, which was in force when appellee became eligible for a continuing contract under R.C. 3319.11, provides

the following with respect to continuing contracts:

"B. Continuing contracts.

"Upon application, a continuing contract is entered into by the Board of Education with a teacher who holds a professional certificate or a permanent or a life certificate, and who within the last five years has taught for at least three (3) years in this school district; or, in the case of a teacher having attained continuing contract status elsewhere, who has completed two years of service in this district, or who is recommended for a continuing contract by the superintendent at any time during such two years of employment (3319.11 ORC). A continuing contract remains in effect until the teacher resigns, retires, or until the contract is terminated as prescribed by law (3319.08 ORC)."

Appellants place great weight on the language "upon application" and assert that there is an absolute duty on appellee and other similarly situated teachers to apply for a continuing contract once the eligibility requirements have been satisfied.

The court of appeals rejected appellants' contention that the collective bargaining agreement controls and observed that an application for a continuing contract is not required by R.C. 3319.11. The court noted that the provision in the collective bargaining agreement contradicted the statutory mandate, and also held that the term "application" was too vague to be enforceable, as it failed to specify whether the application was to be made orally or in writing, to whom it should be made, or when it should be made.

We think it obvious that appellee has met the requirements for a continuing contract in R.C. 3319.11. As noted, she was employed as a "teacher" as that term is used in the statute; she obtained the requisite certification, a professional elementary teacher's certificate effective on July 1, 1984, which has been on file with the board since April 1984; and finally, she has worked more than one hundred twenty days for three of the five years prior to April 1985. That she worked only six of seven hours each day during this period does not prevent her from satisfying this requirement, as this teaching experience was sufficiently regular and substantial to be counted in determining eligibility. See *Rodgers, supra; State, ex rel. Garay, v. Hubbard Bd. of Edn.* (1984), 11 Ohio St. 3d 20, 11 OBR 53, 462 N.E. 2d 1219.

However, we do not find the language "upon application" too vague to be enforceable. Reference to custom and past practices in the school district shows that the standard procedure was for the teacher to send a written application to the principal, who would then forward the application to the superintendent. Thus, even though this language may not be fully self-explanatory, the intent of the parties may be inferred.

With respect to any contradiction between the Master Contract and R.C. 3319.11 as to the application requirement, this question appears to be governed by R.C. 4117.10. That section provides:

"(A) An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of

employment for public employees. * * * Except for sections 306.08, 306.12, 306.35, and 4981.22 of the Revised Code and arrangements entered into thereunder, and section 4981.21 of the Revised Code as necessary to comply with section 13(c) of the 'Urban Mass Transportation Act of 1964,' 87 Stat. 295, 49 U.S.C. 1609(c), as amended, and arrangements entered into thereunder, *Chapter 4117. of the Revised Code prevails over any and all other conflicting laws, resolutions, provisions, present or future,* except as otherwise specified in Chapter 4117. of the Revised Code or as otherwise specified by the general assembly." (Emphasis added.)

As the statute mandates, where a law conflicts with a wage, hour, or term or condition of employment provision found in a collective bargaining agreement entered into pursuant to R.C. Chapter 4117, the collective bargaining agreement prevails. *Jurcisin* v. *Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St. 3d 137, 143, 519 N.E. 2d 347, 352-353. Provisions defining procedures for reemployment are clearly "terms or conditions of employment" provisions within the meaning of R.C. 4117.10. Thus, if R.C. 4117.10 were to be applied and this controversy were to be simply a conflict between Section 1, Article III and R.C. 3319.11, the Master Contract provision would certainly control.

However, we find R.C. 4117.10 in-applicable in this particular case. Upon examining Paragraph B of Section 1 of Article III, in context, we note that the "upon application" provision has been included in the Master Contracts between the board and appellee's representative since at least 1980. Particularly significant is that this language predated the enactment of R.C. 4117.10 and that the Master Contract in force when appellee became eligible for a continuing contract went into effect on March 23, 1984, *before* the effective date of R.C. 4117.10(A) on which appellants rely. R.C. 4117.10 was part of Section 1 of Am. Sub. S.B. No. 133, otherwise known as the Ohio Public Employees' Collective Bargaining Act. With respect to the effective date of R.C. 4117.10, Section 3 of the Act provides in pertinent part:

"Section 4117.10 of the Revised Code, as enacted by this act, shall take effect on the effective date of this act; however, divisions (A), (B), and (C) of that section shall not be applied to any facts occurring before April 1, 1984." (140 Ohio Laws, Part I, 367.)

We read this section to mean, *inter alia,* that an unenforceable provision of a collective bargaining agreement executed before April 1, 1984 will not prevail over conflicting law, as to such an agreement R.C. 4117.10(A) would not apply. See *Columbus Edn. Assn.* v. *Archuleta* (1986), 29 Ohio App. 3d 264, 29 OBR 327, 505 N.E. 2d 279.[1] We see no inconsistency between this inter-

---

[1] In *Archuleta,* a union filed suit against sixty-eight teachers, members of the bargaining unit represented by the union, to recover agency fees allegedly owed to the union. Relying on the collective bargaining agreement in effect, the trial court granted summary judgment to the union, and the teachers appealed. The court of appeals reversed. In its opinion, the court first addressed the Ohio Public Employees' Collec-tive Bargaining Act, Am. Sub. S.B. No. 133, and held that it was not applicable:

"The effective dates of that statute (most sections effective April 1, 1984) post-date the effective date of the collective bargaining agreement at issue here, which was effective September 1, 1983. Consequently, otherwise relevant portions of Am. Sub. S.B. No. 133 are not applicable to this case." *Id.* at 266, 29 OBR at 329, 505 N.E. 2d at 282.

pretation and Section 5 of Am. Sub. S.B. No. 133, which provides:

"Any written contract, agreement, or memorandum of understanding in effect on April 1, 1983 or entered into between January 1, 1983 and March 31, 1984 between a public employer and an employee organization shall be deemed valid for its term, except as provided in division (D) of Section 4 of this act."

Section 5 was certainly not intended to nullify the clear language of Section 3. Rather, it reinforces the policy that the Act is not to be applied retroactively to invalidate previously *lawful* contracts. For example, while R.C. 4117.09(D) prohibits agreements longer in duration than three years, Section 5 would allow these agreements to remain valid if they were executed before April 1, 1984. An agreement would first have to be valid prior to April 1, 1984, for it to remain valid thereafter by virtue of Section 5. Thus for agreements executed prior to April 1, 1984, the law in effect at the time of negotiation and execution controls.

As discussed above, R.C. 3319.11 defines the teachers who are eligible for continuing service status, and this section does not require teachers to apply for a continuing contract. However, appellants assert that Section 1, Article III of the Master Contract requires an application by teachers, such as appellee, who seek a continuing contract. Thus, there is a clear conflict between the statute and the contract provision.

Prior to the enactment of R.C. 4117.10(A), conflicts between laws and collective bargaining agreement provisions were resolved under our decision in *Dayton Classroom Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, 70 O.O. 2d 223, 323 N.E. 2d 714, where we held at paragraph one of the syllabus that a board of educa-

tion has power to enter into a collective bargaining agreement "so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law." See, also, *Struthers City Schools Bd. of Edn.* v. *Struthers Edn. Assn.* (1983), 6 Ohio St. 3d 308, 6 OBR 368, 453 N.E. 2d 613. Since Section 1, Article III purports to place an additional burden on teachers not required by R.C. 3319.11, the application requirement is simply unenforceable. Accordingly, we hold that notwithstanding Section 1, Article III of the Master Contract, appellee was not required to make an application to effect her right to a continuing contract.

We add that even if R.C. 4117.10 (A) were to be applicable in this case the same result would be compelled. In interpreting Section 1, Article III we could not ignore the other provisions of the Master Contract or the overall intent of the parties. This intent is decisively expressed in Section 3, Article I, which provides in pertinent part:

"Nothing shall be written into this agreement to restrict or deny to any members of the Board and/or instructional staff individual rights provided by law."

Since the language "upon application" could simply have no effect prior to April 1, 1984, we must reject the argument that it was the product of the collective bargaining process. Rather, we find the language to be *pro forma* and ministerial in character and that it was never intended to affect or precondition clear statutory rights, as there is no question that a continuing contract would have been automatic had appellee simply made an "application." We believe that this conclusion would in no way retreat from the mandate of R.C. 4117.10. While the General Assembly clearly intended

that governmental entities and public employees be guaranteed the widest possible latitude in their ability to collectively bargain, this court will not enforce a term which could not have been a valid result of the collective bargaining process envisioned by that statute. As we have often stated, statutes such as R.C. 4117.10 should be construed "to avoid unreasonable or absurd consequences." *State, ex rel. Dispatch Printing Co.,* v. *Wells* (1985), 18 Ohio St. 3d 382, 384, 18 OBR 437, 439, 481 N.E. 2d 632, 634.

### III

We also must reject appellants' contention that appellee waived her right to a continuing contract by accepting limited contracts in 1985-1986 and 1986-1987. We agree with the court of appeals that the cases cited by appellants which suggest a valid waiver argument are distinguishable.

In *State, ex rel. Brubaker,* v. *Hardy* (1966), 5 Ohio St. 2d 103, 34 O.O. 2d 225, 214 N.E. 2d 79, the teacher resigned his position in April of his third year of employment. Following the close of that school year, the school board unilaterally withdrew its acceptance of the teacher's resignation and granted him another one-year contract. We held that the teacher waived his right to a continuing contract by allowing his resignation to stand and thereafter entering into a limited contract. In the instant case appellee has never tendered a resignation nor has she taken other steps to terminate her employment with appellant board. See *State, ex rel. Mt. Healthy Teachers' Assn.,* v. *Mt. Healthy Bd. of Edn.* (1978), 54 Ohio App. 2d 235, 239, 8 O.O. 3d 414, 416, 377 N.E. 2d 533, 536 (distinguishing *Brubaker* and *State, ex rel. Ford,* v. *Bd. of Edn.* [1943], 141 Ohio St. 124, 25 O.O. 241, 47 N.E. 2d 223).

In *State, ex rel. Gildersleeve,* v. *Bd. of Edn. of Whitehall* (Jan. 27, 1983), Franklin App. No. 82AP-455, unreported, the teacher withdrew all his funds from the State Teachers Retirement System, applied for and received unemployment compensation, and transferred to Active Military Duty Status with the United States Army Reserve. The court held that these actions, coupled with the teacher's having accepted and fully performed a two-year limited contract, prevented the teacher's eligibility from "developing into a continuing contract by operation of law." Appellee here has taken no actions comparable to those of the teacher in *Gildersleeve,* and we reject any contention that the execution of a limited contract alone is sufficient to waive the right to a continuing contract.

Finally, in *State, ex rel. Johnston,* v. *Cincinnati Bd. of Edn.* (1979), 64 Ohio App. 2d 146, 18 O.O. 3d 109, 411 N.E. 2d 833, the court found the teacher to have waived his right to automatic reemployment by accepting a unique *one-month* teaching contract. In the instant case all of appellee's contracts have been for a full one-hundred-eighty-three-day school year.

Thus, we hold that appellee is entitled to a continuing contract retroactive to the 1985-1986 school year.

### IV

Appellants also challenge the award of back pay to appellee. The court of appeals held that Brown was entitled to be paid for the school years 1980-1981 through 1986-1987 in accordance with the board's duly adopted teacher's salary schedules. Because the court was not presented with sufficient information to determine the appropriate amount of back pay to be awarded, this issue was referred to a referee who recommended an award of

$22,088.55 based upon appellee's stipulation. The court adopted the recommendation and awarded appellee $22,088.55 back pay plus interest at the statutory rate from the date of judgment. We affirm the award of back pay but reverse the award of interest.

With respect to salary schedules for teachers, R.C. 3317.14 provides in pertinent part:

"Any board of education participating in funds distributed under Chapter 3317. of the Revised Code shall annually adopt a teachers' salary schedule with provision for increments based upon training and years of service. Notwithstanding section 3317.13 of the Revised Code, the board may establish its own service requirements provided no teacher receives less than the amount required to be paid pursuant to section 3317.13 of the Revised Code and provided full credit for a minimum of five years of actual teaching and military experience as defined in division (A) of section 3317.13 of the Revised Code is given to each teacher."

R.C. 3317.13(B) provides in pertinent part:

"Each teacher shall be fully credited with placement in the appropriate academic training level column in the district's salary schedule with years of service properly credited pursuant to this section or section 3317.14 of the Revised Code. No rule shall be adopted or exercised by any board of education which restricts the placement or the crediting of annual salary increments for any teacher according to the appropriate academic training level column."

During the school years for which appellee seeks back pay she was paid at the "Tutoring" rate in accordance with the "Supplemental Salary Schedule" of successive Master Contracts. Since we have determined that she was employed as a "teacher" throughout this period, under R.C. 3317.13(B) she was entitled to compensation in accordance with the board's duly adopted "Teacher's Salary Schedule." Payment under the supplemental schedule was not appropriate, as Brown was being paid for regular teaching duties and not for the performance of additional duties. Under R.C. 3319.08, supplemental salaries are proper only where a board of education authorizes compensation "in addition to the base salary stated in the teachers' salary schedule for the performance of duties by a teacher which are in addition to the teacher's regular teaching duties." Thus, we affirm the adoption of the referee's recommendation of a $22,088.55 award of back pay.

However, we must reverse the award of interest to appellee. As we recently held in the syllabus of *Beifuss* v. *Westerville Bd. of Edn.* (1988), 37 Ohio St. 3d 187, 525 N.E. 2d 20: "A public school board of education is not liable for the payment of prejudgment interest on an award of back pay absent a statute requiring such payment or an express contractual agreement to make such payment." In the present case there is neither a statute requiring prejudgment interest nor a contractual agreement to that effect. Thus appellee is not entitled to an award of prejudgment interest.

## V

Finally, we must address the question of whether a writ of mandamus is the appropriate remedy in this action and whether the granting of a writ was warranted on appellee's motion for summary judgment.

This court has consistently held that when a teacher eligible for tenure under R.C. 3319.11 is offered only a

limited contract, she is entitled to a writ of mandamus ordering the issuance of a continuing contract. See *Rodgers, supra; Voss, supra; State, ex rel. Gandy,* v. *Bd. of Edn.* (1971), 26 Ohio St. 2d 115, 55 O.O. 2d 209, 269 N.E. 2d 605. We have also held that an action in mandamus is appropriate for a claim to back compensation for substitute teaching credits just as it is for other claims of public employees to wage or benefit entitlements granted by statute or ordinance. *State, ex rel. Gingrich,* v. *Fairfield Bd. of Edn.* (1985), 18 Ohio St. 3d 244, 18 OBR 300, 480 N.E. 2d 485.

With respect to the granting of the writ on motion for summary judgment, Civ. R. 56(C) provides in pertinent part:

"A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Before a moving party is entitled to prevail on a motion for summary judgment the following must be established: "'* * * '(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion[,] and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 117, 522 N.E. 2d 489, 505 (quoting *Temple* v. *Wean United, Inc.* [1977], 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274).

The facts as stipulated by the parties unmistakably establish that appellee was employed as a "teacher" as defined in R.C. 3319.09(A). Since we have determined that notwithstanding R.C. 4117.10(A) appellee's right to a continuing contract is governed by R.C. 3319.11 and not by Section 1, Article III of the Master Contract, the only factual inquiry to be made is whether appellee has met the requirements of R.C. 3319.11. The stipulated facts establish that she has, and thus appellee is entitled to a continuing contract and back pay as a matter of law.

For the foregoing reasons, we affirm the court of appeals' decision to grant appellee a continuing contract retroactive to the 1985-1986 school year, and we affirm the award of back pay. However, we reverse the award of prejudgment interest.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur in the judgment of the majority which affirms the court of appeals' decision to grant appellee a continuing contract retroactive to the 1985-1986 school year. I also concur in the opinion of the majority which affirms the award of back pay to appellee.

I respectfully dissent, however, from the decision of the majority not to award interest at the statutory rate from the date of original judgment as properly ordered by the court of appeals. I previously expressed my feel-

ings in this regard in *Beifuss* v. *Westerville Bd. of Edn.* (1988), 37 Ohio St. 3d 187, 525 N.E. 2d 20. The well-reasoned opinion of the court of appeals of May 13, 1987, authored by Judge Fain, and the entry of said court on the same day, the report of Referee Rebecca J. Wolf, dated June 26, 1987, and filed June 29, 1987, as well as the judgment entry of the court of appeals of August 7, 1987, superbly state the case.

As I indicated in *Beifuss, supra,* at 192, 525 N.E. 2d at 25: "* * * Without the threat of prejudgment interest, boards of education are permitted to breach contracts and yet face no penalty when they actually do so. I think it is important for this court to remove any incentive for acting in such a manner. * * *" I continue to subscribe to this view.

Further, I think it is appropriate to note the inconsistency of this court in today allowing back pay to appellee and yet in a recent case, almost on all fours, *State, ex rel. Schneider,* v. *North Olmsted Bd. of Edn.* (1988), 39 Ohio St. 3d 281, 530 N.E. 2d 206, not ordering back pay or including any provision in our order to have back pay computed. I recognize it is not always easy to be absolutely consistent in our decisions but when two cases are so alike and follow each other so closely in time, it would appear that this should not be an onerous task.

Two final comments. First, I do not find any inconsistency, as seemingly found by the majority and argued by appellants, among the Teacher Tenure Act, the Master Contract governing the relationship between the parties and R.C. Chapter 4117. Additional comment on this issue would only tend to obfuscate the issue needlessly and since the judgment of the majority is correct on the ultimate issue, I refrain from further comment. Second, I cannot help observing, with some amusement (but albeit with substantial gratitude), the language of the majority that "* * * the General Assembly clearly intended that governmental entities and public employees be guaranteed the widest possible latitude in their ability to collectively bargain, * * *" given this court's recent decision in *Rocky River* v. *State Emp. Relations Bd.* (1988), 39 Ohio St. 3d 196, 530 N.E. 2d 1.