OPINION
The instant action in mandamus is presently before this court for final consideration of the merits, based upon the parties' stipulations of fact and respective briefs. After reviewing the foregoing materials, we conclude that relator, Beverly Crites, has shown that she is entitled to be awarded five years of service for purposes of determining her rate of pay as a teacher. Accordingly, judgment will be entered against respondent, the Windham Exempted Village Board of Education, as to the entire mandamus petition.
Relator is currently employed by the Windham Exempted Village School District, located in Portage County, Ohio. Respondent is the corporate entity which is legally authorized to operate the public schools of this district and to enter into contracts with the school employees. The present controversy between the parties concerns whether respondent has a legal duty to increase relator's rate of compensation predicated upon the teaching experience she had obtained prior to taking her present position in 1997.
Relator has been a certified teacher in the state of Ohio since 1991. For the first six years of her career, relator worked for the Maplewood Area Joint Vocational School District in Portage County. During the last five years of relator's employment with this particular district, she rarely worked more than seven hours on a given day; however, she did post four hours per day for more than one hundred twenty days in each school year. In fact, relator consistently posted a four-hour day for five days per week during the majority of this five-year period.
For example, of the one hundred seventy-six days for which she was compensated during the 1996-97 school year, relator worked her usual four-hour day on one hundred sixty-three occasions. Relator posted similar hours during the three preceding years of her employment with the joint vocational school district: (1) of the two hundred days she worked during the 1995-96 school year, she posted a four-hour day on one hundred eighty-three occasions; (2) of the one hundred eighty-six days she worked in the 1994-95 school year, she posted a four-hour day on one hundred fifty-five occasions; and (3) of the two hundred fourteen days she worked in the 1993-94 school year, she posted a four-hour day on one hundred sixty-eight occasions.
The foregoing figures were derived from the timesheets relator completed during the four school years in question. In regard to the 1992-1993 school year, the parties were able to submit timesheets covering only the last six months of that particular year. Our review of those timesheets demonstrates that relator posted her usual four-hour day on ninety-eight occasions. As to the first six months of that year, the parties stipulated that the hours she posted during that time frame were similar to the hours she worked during the other four years.
In working her typical four-hour day, relator's duties were comprised solely of the instruction of students. During each of the five school years at issue, there were a few days in which relator taught for more than four hours. Moreover, on some of the days in which relator taught for only four hours, she posted additional hours by engaging in certain non-instructional activities, such as editing a school newsletter and counseling students on employment and educational opportunities.[1]
Following the conclusion of the 1996-97 school year, relator left her employment with the joint vocational school district and signed a one-year limited teaching contract with respondent. At the time she executed this contract, relator was told by the school superintendent that, for purposes of determining her salary, she would not be credited with any years of teaching service. Relator responded that this was acceptable to her.
Pursuant to this teaching contract, relator worked full-time hours for respondent. Following her first year with respondent, relator signed a new one-year limited teaching contract for the 1998-99 school year. This second contract stated that, for purposes of setting her salary, respondent would credit relator with one year of service.
Throughout her two-year tenure with respondent, relator has been a member of the Windham Teachers Association, the entity which has the exclusive power to negotiate collective bargaining agreements on behalf of the teachers employed by respondent. During this period, two separate collective bargaining agreements have been in effect. However, neither of these agreements has contained a provision governing the right of a teacher to be credited for teaching experience she has obtained in another district.
Near the conclusion of her second year with respondent, relator brought the instant action in mandamus, essentially seeking a determination that she is entitled to be given credit for five full years of actual teaching experience. For her relief, relator requested the issuance of a judgment ordering respondent to place her at the seventh level of the salary schedule and reimburse her for the salary and benefits she should have received during the first two years of her employment.
After respondent had answered the mandamus petition, the parties filed stipulations of fact which were intended to resolve all of the factual issues in this matter. Attached to these stipulations were copies of certain documents, the authenticity of which were also stipulated by the parties. To the extent that the parties' stipulations and documents were relevant to the legal issues before this court, their substance has been summarized in the foregoing statement of facts.
In conjunction with the stipulations of fact, the parties have submitted briefs on the merits of the legal issues raised by relator's basic mandamus claim and by the various defenses asserted by respondent. In regard to the mandamus claim itself, our review of the respective briefs indicates that our decision on the basic merits of the claim will turn upon our resolution of the following issue: For purposes of determining a teacher's status on a school district's salary schedule, can a year of service consist of four-hour days which the teacher posts on a consistent basis?
In attempting to answer this query, relator submits that it was not necessary for her to be a "full-time" teacher in order for her usual posted hours to constitute a "day" of service at the joint vocational school. Stated differently, she maintains that she was not required to be working the entire time the school was in session on a given day in order to receive credit for that day. Instead, relator asserts that she must be awarded credit for a day if she performed regular and substantial duties during her usual posted hours.
In support of her argument, relator aptly notes that the calculation of a teacher's salary, based upon her years of experience, is governed by two sections of the Ohio Revised Code. The first relevant section is R.C. 3317.14, which states in part:
 "Any school district board of education * * * shall annually adopt a teachers' salary schedule with provision for increments based upon training and years of service. Notwithstanding sections 3317.13 and 3319.088 * * * of the Revised Code, the board may establish its own service requirements and may grant service credit for such activities as teaching in public or nonpublic schools in this state * * * provided no teacher receives less than the amount required to be paid pursuant to section 3317.13 of the Revised Code and provided full credit for a minimum of five years of actual teaching and military experience as defined in division (A) of section 3317.13 of the Revised Code is given to each teacher."
Under the foregoing provision, a board of education has the authority to set its own criteria for deciding whether a teacher is entitled to more than five years of credit for the experience she has obtained at another public school. However, as to the issue of whether a credit should be given for five years or less, a board of education must apply the criteria set forth in R.C.3317.13(A). That statute provides, in part:
 "* * * `Years of service' includes the following:
 "(a) All years of teaching service in the same school district * * *, with each year consisting of at least one hundred twenty days under a teacher's contract;
 "(b) All years of teaching service * * * in another public school * * *, with each year consisting of at least one hundred twenty days under a teacher's contract; * * *."
Noting that the word "day" is not defined in R.C. 3317.13(A), relator invites this court to adopt the same definition for the word which the Supreme Court of Ohio has followed in interpreting a similar statutory provision. Specifically, relator notes that, in deciding whether a teacher is entitled to a continuing contract under R.C. 3319.11, the Supreme Court has held that a teacher is not required to work an eight-hour day in order for that day to count toward a year of service.
In State ex rel. Rodgers v. Hubbard Local Bd. of Edn. (1984),10 Ohio St.3d 136, the teacher was employed by the school board under a series of four one-year limited teaching contracts. In performing her duties as an elementary reading aide, the teacher worked one hundred eighty days each of the four years; however, because she was not a full-time employee, she posted only five hours and fifteen minutes each day. After she became a full-time employee in 1981, the teacher requested a continuing teaching contract based in part on her four years as the reading aide. When the board denied her request, she brought an action in mandamus.
In reversing the denial of the writ, the Rodgers court began its analysis by noting that, for purposes of a continuing contract, R.C. 3319.09(B) defined the term "year" as a minimum of one hundred twenty days of actual service in one school year. The court then emphasized that the Ohio Revised Code did not make any distinction between part-time and full-time teachers, and that statutes governing the employment of teachers had always been interpreted liberally in their favor. Based upon this, theRodgers court held that the teacher in that action should be credited with four years of service under R.C. 3319.09(B) because her duties as the reading aide had been substantial and had been performed on a regular basis.
A similar result was reached in State ex rel. Garay v. HubbardLocal Bd. of Edn. (1984), 11 Ohio St.3d 20. In its opinion, theGaray court never stated what the specific duties of the teacher had been when she worked part-time. Instead, the court predicated its decision solely upon the fact that, during her part-time employment, the teacher had been required to work four hours per day, five days per week.
Although the Supreme Court has never extended the Rodgers
analysis to the issue of service credit for salary purposes, such an extension would be logical. First, this court would note that the statutory definitions in R.C. 3319.09(B) and 3317.13(A) both require a teacher to serve at least one hundred twenty "days" to qualify for a one-year credit. Second, this court cannot discern any reason why a year of service should be calculated differently for purposes of tenure as compared to purposes of salary.
Despite this, respondent submits that the Rodgers precedent cannot be applied in the instant case because the Supreme Court has recently applied R.C. 3317.13(A) in a different manner. InState ex rel. Walker v. Lancaster City School Dist. Bd. of Edn.
(1997), 79 Ohio St.3d 216, a full-time teacher sought to be given credit for a prior school year in which she had been employed as a substitute for the Lancaster district. In that prior year, the teacher had worked one hundred six full days for Lancaster, 7.5 partial days for Lancaster, and nine full days for a second school district. Initially, the Lancaster board awarded the teacher a one-year credit for that prior year, based upon the recommendation of the human resources director. Subsequently, the board reversed its decision when the director changed her interpretation of R.C.3317.13(A)(1).
The teacher in Walker then brought a mandamus action against the school board, seeking to have her one-year service credit restored. In reversing the appellate court's judgment in favor of the teacher, the Supreme Court focused its analysis upon the issue of whether a board of education has the authority to revoke a decision to grant a credit. However, as a preliminary matter, the court interpreted R.C. 3317.13(A)(1):
 "R.C. 3317.13(A)(1) defines `years of service' to include `[a]ll years of teaching service in the same school district * * *, regardless of training level, with each year consisting of at least one hundred twenty days under a teacher's contract[.]' Pursuant to 3317.13(A)(1), the school board is not required to aggregate either teaching experience from different school districts or half days from the same school district. * * *" (Emphasis added.) Id. at 219.
At first blush, the Walker analysis would appear to be controlling as to the specific issue before this court. That is, if a teacher is not allowed to aggregate her partial days for purposes of complying with the "one hundred twenty days" requirement of R.C.3317.13(A)(1), it should follow that a partial day could never constitute a full day for those purposes. As to this point, we would indicate that, although the specific issue in the instant action is whether relator is entitled to credit under R.C. 3317.13(A)(2) for service at another school district, our interpretation of the Walker holding in regard to R.C. 3317.13(A)(1) would likewise be controlling as to R.C. 3317.13(A)(2) because the relevant wording of both divisions of the statute is identical.
Despite the appealing simplicity of the foregoing discussion, this court concludes that the Walker decision does not foreclose the extension of the Rodgers precedent to the determination of what constitutes a "day" of service under R.C. 3317.13(A). Our reading of the Walker opinion demonstrates that the facts of that case did not warrant the application of the Rodgers precedent. Specifically, we would note that the teacher in Walker only worked 7.5 partial days during the school year at issue. As a result, it could not be said that the duties the Walker teacher performed during those partial days were substantial and regular. Instead, the regular duties of the Walker teacher involved working a complete day as a substitute.
Given these facts, the Walker court had no reason to consider whether the Rodgers precedent should be applied to R.C.3317.13(A). Therefore, the Walker holding should not be interpreted to conflict with the Rodgers precedent when, given the similarity of the statutory language in R.C. 3319.09(B) and3317.13(A), logic would dictate that the two provisions should be applied consistently.
Respondent argues that the application of the Rodgers holding to R.C. 3317.13(A) will cause unfair results in the determination of a teacher's right to a service credit. To some extent, this court would tend to agree with this argument. Obviously, the teacher in Walker who worked one hundred six complete days would have more hours of actual experience than a teacher who worked one hundred twenty four-hour days. Yet, under Rodgers and Garay, only the latter teacher would be entitled to a year of service credit.
Nevertheless, we are constrained to note that such an unfair result could occur in the calculation of a teacher's right to a continuing contract under R.C. Chapter 3319. Despite this, theRodgers court still held that a part-time teacher must be given a service credit when her duties were substantial and regular. Thus, given that there is no logical reason why the calculation of a service credit under R.C. 3319.09(B) should differ from the calculation under R.C. 3317.13(A), we will follow Rodgers in determining relator's rights in the instant action.
As was noted above, relator's timesheets for the four school years between 1993 and 1997 indicate that she engaged in the instruction of students for four hours per day on a consistent basis. In fact, she posted these hours five days a week for the majority of this time frame. Accordingly, pursuant to Rodgers andGaray, relator's duties with the joint vocational school district were substantial and regular during the four years at issue. In turn, because relator worked more than one hundred twenty four-hour days during each of these four years, relator is entitled to a service credit for each of these years under R.C.3317.13(A)(2).
As to the 1992-93 school year, the parties were unable to submit the timesheets for the first six months of that year because they were not available. However, in lieu of the missing timesheets, the parties stipulated that the hours relator posted during those six months were similar to the type of hours she worked during the other four years. Moreover, our review of the available timesheets for that year show that relator worked her usual four-hour day on a consistent basis. Therefore, consistent with the foregoing analysis, we further conclude that relator is entitled to a service credit for the 1992-93 school year.
In relation to our application of the Rodgers precedent in this action, respondent asserts that relator did not perform her duties on a regular basis because the timesheets demonstrate that she did not work for considerable periods during the five years. For example, the timesheets indicate that relator did not post any hours during November and December of 1996.
As to this issue, we would emphasize that, for whatever reason, the Ohio General Assembly has not required a teacher serve a complete school year in order to qualify for a year of credit. Instead, R.C. 3317.13(A)(2) only requires a teacher to serve one hundred twenty days. Thus, so long as a teacher performs her duties on a consistent basis during those periods of time in which she is required to work, she must be given a service credit if she works one hundred twenty days during the course of the school year.
In this action, while it is true that there were two periods of time during relator's prior employment in which she did not work for a number of weeks, these two inactive periods only covered approximately five months of the five years in question. During the remainder of her employment with the joint vocational school district, relator did not post erratic hours; i.e., this was not a situation in which relator would work two days one week and three days the next week. In fact, it can be said that, except for the fact that she usually taught for only four hours a day, relator's schedule was similar to that of a full-time teacher.
In addition to contesting the basic merits of relator's mandamus claim, respondent has asserted four defenses against her. Under its first defense, respondent argues that relator is not entitled to the issuance of the writ because she had an adequate remedy at law. Specifically, respondent submits that she was required to litigate the credit issue in the grievance procedure set forth in the collective bargaining agreements between the Windham Teachers Association and respondent.
In Walker, supra, the Supreme Court of Ohio expressly stated that a grievance and arbitration procedure in a collective bargaining agreement can constitute an adequate legal remedy which would preclude the issuance of a writ. However, the court further stated that a teacher is not required to invoke such a procedure when the subject matter of the dispute was not covered in the collective bargaining agreement. The court then held that the grievance procedure had not been applicable in that particular case because the collective bargaining agreement did not have any clause governing the calculation of a teacher's service credit for salary purposes.
In this action, our review of the two applicable collective bargaining agreements shows that neither had a provision controlling the determination of a teacher's right to a service credit for experience obtained at another school district. As a result, because relator could not properly invoke that procedure to settle the credit issue, she was not foreclosed from maintaining this action.
Under its second defense, respondent submits that relator waived her right to bring this action when she signed her employment contract without raising the credit issue. In support of this argument, respondent asserts that relator was aware at the time she executed the first contract that she had been entitled to the service credit.
As to this point, this court would note that the parties' stipulations of fact do not contain any statement indicating what relator specifically knew about her right to the service credit when her employment with respondent began. Instead, the stipulations only stated that when the school superintendent informed her that she would receive the salary of a teacher with no experience, relator merely replied that that was acceptable to her. In the absence of a stipulation concerning relator's exact knowledge, there is no factual predicate to support the conclusion that relator had voluntarily waived her right to the credit.
Furthermore, our review of the relevant case law indicates that the mere execution of an employment contract is not sufficient to establish a waiver of the right to a service credit. See, e.g.,State ex rel. Fink v. Bd. of Educ. of the City of Grandview Hts.School Dist. (May 12, 1994), Franklin App. No. 93APE10-1462, unreported. Accordingly, even if there had been a stipulation as to relator's knowledge, respondent could have only satisfied the elements of waiver if there had been a further stipulation that relator had made an express manifestation, either orally or in writing, of her intent to relinquish her right to the credit.
Under its third defense, respondent argues that relator's mandamus claim is barred by the doctrine of laches. In regard to this defense, we would merely note that, like its waiver argument, respondent's argument on this defense is predicated entirely upon the assertion that relator had been aware of her right to the service credit when she first became an employee. Again, our review of the parties' stipulations shows that it does not contain a statement concerning the extent of relator's knowledge.
In addition, as part of its laches argument, respondent has asserted that, as a result of the delay in the filing of this action, it has been prejudiced in the preparation of its general defense to the mandamus claim. However, like the knowledge assertion, there is no statement in the stipulations of fact concerning this matter. In the absence of such a statement, this court cannot assume the existence of prejudice because that is a factual matter which must be established through the evidentiary materials before this court.
Finally, respondent maintains that relator should be estopped from obtaining her requested relief. In support of this defense, respondent asserts that, by failing to raise the credit issue in a timely manner, relator improperly induced it into believing that she had been receiving the appropriate amount of salary during the first two years of her employment. Based upon this, respondent further asserts that it would be inequitable to require respondent to reimburse her for her past wages because such an order will adversely affect its budget.
In considering the doctrine of equitable estoppel in the context of an action for a continuing teacher's contract, the Supreme Court of Ohio has stated that it is necessary for the school board to show that its change of position was induced by fraud. See State ex rel. Chavis v. Sycamore City School Dist. Bd.of Edn. (1994), 71 Ohio St.3d 26, 35. In the instant action, the parties' stipulations do not set forth any facts from which it could be concluded that relator engaged in fraud, either actual or constructive. Simply stated, in the absence of any stipulation as to relator's knowledge of her right, it cannot be inferred that she intentionally sought to mislead respondent as to the amount of her prior experience.
Before a writ of mandamus can be issued to compel a school board to award further compensation to a teacher under R.C.3317.14, the relator must establish that: (1) she has no adequate remedy at law; (2) she has a clear right to the additional compensation; and (3) the school board has a clear legal duty to pay the compensation. State, ex rel. Madden v. Windham ExemptedVillage School Dist. Bd. of Edn. (1989), 42 Ohio St.3d 86, 88. Pursuant to the foregoing discussion, this court concludes that relator in the instant action has satisfied each of the foregoing elements.
Therefore, judgment is hereby entered in favor of relator on her entire mandamus petition.[2] It is the order of this court that a writ of mandamus shall be issued requiring respondent to: (1) award relator five additional years of service for purposes of determining her rate of compensation under any future employment contract; (2) compensate relator for the difference between the actual compensation she received under her first two employment contracts and the rate of compensation to which she would have been entitled as a teacher with five additional years of service; and (3) award relator any other benefit to which she would have been entitled during the first two years of her employment.
[1] In calculating the number of four-hour days relator worked during each of the five school years, this court counted those days in which she taught for four hours and also engaged in non-instructional activities. However, we did not count those days in which she taught more than four hours because such a day was not a typical workday for her. Similarly, we did not count the days in which she taught less than four hours.
[2] As part of her prayer for relief in her complaint, relator requested that she be awarded prejudgment interest on the judgment. In considering such requests in actions similar to the instant case, the Supreme Court of Ohio has held that a school board will not be required to pay prejudgment interest unless there is a contract provision or statute which expressly provides for such a payment. State ex rel. Brown v. Milton-Union ExemptedVillage Bd. of Edn. (1988), 40 Ohio St.3d 21, 28. Although the court has subsequently stated that a school board can be required to pay post-judgment interest under R.C. 1343.03(A), see State exrel. Tavenner v. Indian Lake Local School Dist. Bd. of Edn.
(1991), 62 Ohio St.3d 88, the Brown decision has never been expressly overruled.
Our review of the collective bargaining agreements and relator's individual contracts indicate that neither had a clause providing for the payment of prejudgment interest. Thus, as there is no statute expressly allowing for the payment of such interest by a school board, relator is not entitled to be awarded prejudgment interest under the facts of this case.