KEHOE, APPELLANT, *v.* BRUNSWICK CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE.

(No. 1280—Decided December 21, 1983.)

*Ronald G. Macala,* for appellant.

*Janet L. Maher* and *David J. Millstone,* for appellee.

MAHONEY, P.J. Plaintiff-appellant, Luann Kehoe, challenges a trial court order granting summary judgment for defendant-appellee, Brunswick City School District Board of Education (the "board"), and holding that she was not entitled to notice of appellee's intent to terminate her employment pursuant to R.C. 3319.11. We affirm the trial court's order.

Kehoe was employed by the board as a learning disability tutor for the 1978-1979, 1979-1980 and 1980-1981 school years. The 1980-1981 contract between the parties provided in part:

"WHEREAS, the Tutor does not have continuing service status in the Brunswick City School District, and the Tutor has been recommended for employment or re-employment as Tutor for not to exceed one (1) school year by the Superintendent of Schools of the Brunswick City School District, and the Board of Education has approved such recommendation;

"NOW, THEREFORE, IT IS MUTUALLY AGREED that on and after the effective date of employment, under this contract, September 2, 1980, the Tutor shall be employed in the public schools of the Brunswick City School District for the 1980-1981 school year, or such part thereof as may succeed the effective date of employment under this contract, to tutor and when assigned as a Tutor subject to termination when such services no longer are needed and subject to the provision that there is no guarantee of a minimum or specific number of assignments."

The contract further specified an hourly pay rate. During the 1980-1981 term, appellant worked six and one-half hours a day for five days each week throughout the school year.

The board admits that it failed to inform Kehoe on or before April 30, 1981, that it did not intend to renew her tutor's contract. Rather, by letter dated June 15, the assistant superintendent notified appellant that due to the projected tutoring needs and assignments, he did not plan to recommend her for employment as a tutor for the 1981-1982 school year. Instead, he offered her a position as a substitute teacher. On September 3, 1981, Kehoe signed a contract accepting employment as a substitute teacher.

On March 31, 1982, Kehoe filed a complaint in the Medina County Court of Common Pleas alleging, *inter alia,* that the board's failure to comply with R.C. 3319.11 automatically renewed her tutoring contract for the 1981-1982 academic term and requesting damages equal to her salary for the 1981-1982 school year for the board's breach of said contract. The trial court granted the board's motion for summary judgment finding as a matter of law that appellant was not hired under a limited

contract as defined in R.C. 3319.08 and, thus, was not entitled to notice of termination pursuant to R.C. 3319.11.

Kehoe appeals, contending:

"The trial court erred in holding that appellant was not entitled to the notice of nonrenewal provided in Ohio Revised Code § 3319.11.

"a. During the 1980-81 school year, appellant was a 'teacher' employed under a 'limited contract.'

"b. Appellee's failure to comply with the notice provision of Ohio Revised Code § 3319.11 resulted in appellant's automatic re-employment for the 1981-1982 school year.

"c. Appellant is entitled to recover back pay for the 1981-1982 school year."

R.C. 3319.09(A) defined "teacher" as:

"* * * all persons certified to teach and who are employed in the public schools of this state as instructors, principals, supervisors, superintendents, or in any other educational position for which the state board of education requires certification including persons having a certificate issued pursuant to sections 3319.22 to 3319.31, inclusive, of the Revised Code * * *."

Appellant was apparently employed as an individual/small group instructor pursuant to Ohio Adm. Code 3301-51-03 (C) which defines her duties as follows:

"(C) Individual/small group instruction

"* * *

"(6) Teacher responsibilities

"(a) The individual/small group teacher will develop instructional objectives on a cooperative basis with the regular classroom teacher, which will enable the handicapped child to participate to the maximum extent possible in the regular education program.

"(b) The individual/small group teacher shall be responsible for teaching prerequisite skills necessary for learning the fundamental concepts of an instructional objective and/or for expanding and reinforcing concepts that are being taught in the regular classroom.

"(c) Because this instruction is to be supplementary in nature, the individual/small group instruction teacher shall not be responsible for the total instruction of the subject areas, student evaluations, or assignment of grades."

Further, the individual/small group instructor must meet certain certification requirements.

Kehoe holds the required provisional teaching certificates. Her duties include instructing handicapped students. Thus, she clearly fits within the statutory definition of a teacher. See *Krolopp* v. *Bd. of Edn.* (1974), 47 Ohio App. 2d 208 [1 O.O.3d 282].

The trial court found that appellant's tutoring contract was not a limited contract and, therefore, that the board was not required to comply with the April 30 notice provision contained in R.C. 3319.11. We do not agree.

R.C. 3319.08 categorizes all teachers' contracts as either continuing or limited. See *Crawford* v. *Bd. of Edn.* (1983), 6 Ohio St. 3d 324, 326-327 (a substitute teacher is employed under a limited contract); and *Tate* v. *Westerville Bd. of Edn.* (1983), 4 Ohio St. 3d 206 (a supplemental contract for the performance of additional services is a limited contract).

In the instant case, the contract states that appellant "* * * does not have continuing service status in the Brunswick City School District * * *." Further, R.C. 3319.11 requires the board to enter into a limited contract with each teacher who holds a provisional or temporary certificate regardless of the length of previous service. Kehoe holds two provisional certificates. Thus, her contract is clearly not of a continuing nature and must then be a limited contract.

R.C. 3319.11 states in part:

"Any teacher employed under a limited contract, * * * is, at the expiration of such limited contract, deemed re-

employed under the provisions of this section at the same salary plus any increment provided by the salary schedule unless the employing board, acting on the superintendent's recommendation as to whether or not the teacher should be re-employed, gives such teacher written notice of its intention not to re-employ him on or before the thirtieth day of April. * * * The failure of the parties to execute a written contract shall not void the automatic re-employment of such teacher."

Thus, failure to give timely written notice of its intent not to renew Kehoe's limited contract resulted in automatic renewal unless some specific statutory exception applies. See *Tate* v. *Westerville Bd. of Edn.*, *supra*, and *State, ex rel. Peake*, v. *Bd. of Edn.* (1975), 44 Ohio St. 2d 119 [73 O.O.2d 437].

R.C. 3319.10 provides:

"Teachers may be employed as substitute teachers for terms not to exceed one year for assignment as services are needed to take the place of regular teachers absent on account of illness or on leaves of absence or to fill temporarily positions created by emergencies; such assignment to be subject to termination when such services no longer are needed.

"* * *

"Teachers employed as substitutes on a casual or day-to-day basis shall not be entitled to the notice of nonre-employment prescribed in section 3319.11 of the Revised Code, but boards of education may grant such teachers sick leave and other local privileges and cumulate such service in determining seniority."

As a tutor, Kehoe cannot substitute for a regular classroom teacher who is ill or on a leave of absence. Her tutorial instruction may only supplement the instruction provided in regular classes. Ohio Adm. Code 3301-51-03(C). Further, the record reveals that appellant worked every day during the 1980-1981 school year. Thus, she is neither a substitute teacher, nor does she work on a casual or day-to-day basis. The board's failure to give notice on or before April 30, 1981 of its intent not to re-employ appellant automatically renewed her tutor's contract.

While our holding on the issue discussed above differs from that of the trial court, we believe that the ultimate result reached below is correct. Under the 1980-1981 tutoring contract, the board had the right to terminate when appellant's services were no longer needed. A fair reading of the June 15 letter indicates that the projected enrollment in the tutoring program had declined and that the board no longer needed Kehoe's services.

Further, the record reveals that Kehoe accepted employment as a substitute teacher by executing a contract to that effect on September 3, 1981. Ohio Adm. Code 3301-51-03(C) (1)(b) requires that individual and small group instruction be provided in a school building during a portion of the regular school day. Clearly, Kehoe could not substitute for a regular classroom teacher and tutor special education students at the same time. Moreover, her brief before this court states:

"Since April 30, 1981 had passed, appellant assumed that, notwithstanding the June 15, 1981 notice, her employment had been automatically renewed. * * *"

By agreeing to accept alternative employment, appellant has waived any statutory right to automatic renewal of the 1980-1981 tutorial contract. *State, ex rel. Brubaker*, v. *Hardy* (1966), 5 Ohio St. 2d 103 [34 O.O.2d 225]; and *State, ex rel. Johnston*, v. *Bd. of Edn.* (1979), 64 Ohio App. 2d 146 [18 O.O.3d 109].

We overrule appellant's assignment of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD and GEORGE, JJ., concur.