### State, ex rel. Tavenner
### v.
### Indian Lake Local School District
### Board of Education
*[Cite as 3 AOA 77]*

*Case No. 8-90-3*
*Logan County, (3rd)*
*Decided May 16, 1990*

*Messrs. Snyder, Rakay & Spicer, Mr. Peter J. Rakay, Attorney at Law, 316 Talbott Tower, Dayton, Ohio 45402, for Relator.*

*Messrs. Bricker & Eckler, Mr. Nicholas A. Pittner, Ms. Sue A. Wyskiver, Attorneys at Law, 100 S. Third Street, Columbus, Ohio 43215-4291, for Respondents.*

*Per Curiam.*

This is an action in mandamus directed against the Indian Lake Local School District Board of Education (the board), the superintendent of the Indian Lake Local School District and the treasure of the Indian Lake Local School District, by the relator, Joy J. Tavenner, a former employee of the board.

The Indian Lake Education Association (ILEA) is the authorized collective bargaining representative of certificated personnel employed by the board. Pursuant to the Comprehensive Agreement between the board and ILEA, for the 1985-1986 school year, the ILEA consisted of all "classroom teachers" in the district. A "classroom teacher" was defined in the recognition provision of the agreement as any "Board employee whose salary is determined by the 'Teachers' Salary Schedule set forth in this document". Under the 1985-1986 Comprehensive Agreement, tutors were not specifically recognized as members of the bargaining unit.

Subsequently, during the negotiations which resulted in the Comprehensive Agreement governing the 1986-1987 school year, the ILEA and the board agreed that tutors would be added to the recognition provision of the agreement. Therefore, tutors were recognized members of the bargaining unit beginning with the 1986-1987 school year. However, the 1986-1987 Comprehensive Agreement did not provide a tutor's wage or salary schedule.

For the school years 1985-1986 and 1986-1987, relator entered into written employment contracts with the board. The 1985-1986 employment contract between the board and relator, was titled "Teachers' Contract Limited" and provided in part:

"WHEREAS, the Superintendent of Schools has recommended the employment of the teacher for not to exceed one year(s) and the Board has approved such recommendation;

"NOW, THEREFORE, the parties to this agreement for and in consideration of their mutual promises, do hereby agree as follows:

"1. The Board does hereby enter into a Limited Contract with the Teacher for the school year(s) 1985-86 TITLE VI-B Tutor - 7 hours per day - $9.00 per hr. and fixes the salary of the Teacher at the rate of $11,340 per year, or a proportional part of this sum for such portion of the year served, in accordance with the salary schedule set forth in the currently effective Comprehensive Agreement between the Board and the Indian Lake Education Association * * *. All payments of salary shall be made in accordance with the pay plan prescribed by the Comprehensive Agreement.

"2. The Teacher agrees to teach in the service of the Board of Education of the Indian Lake School District of Lewistown, Ohio, for he aforesaid school year(s), each consisting of 180 days as provided in the Comprehensive Agreement between the Board and the Indian Lake Education Association."

The 1986-1987 employment contract between relator and the board was titled "Teacher's Contract - Limited Tutor Title VI-B". With the exception of an increase in relator's hourly rate of pay, the 1986-1987 employment contract provisions were identical to the 1985-1986 contract provisions. We note that the reference in

each contract to Title VI-B is directed to a program for the education of the handicapped financed in whole or in part from federal funds.

On February 1, 1990, relator filed the instant complaint in mandamus alleging that, during the academic years of 1985-1986 and 1986-1987, she was employed as a teacher and therefore, pursuant to R.C. 3317.13 and 3317.14, she was entitled to be paid according to the district'sduly adopted Teachers' Salary Schedule which was incorporated into the Comprehensive Agreements. Relator seeks back pay for the disputed years consisting of the difference between the wages actually paid to her pursuant to her employment contracts and the pay according to the salary schedule of the relevant agreements.

Relator has moved for summary judgment asserting her status as a "teacher" and thus her corollary right to back pay in accordance with the Teachers' Salary Schedule. Respondents have also moved for summary judgment asserting that relator was hired as a tutor, that she performed the limited duties of a tutor as opposed to the more extensive duties of a "classroom teacher" and that relator therefore was not entitled to be paid according to the Teachers' Salary Schedule.

In determining the motions for summary judgment, we first note the existence of ambiguities in the terms of the 1985-1986 and 1986-1987 employment contracts regarding the position for which relator was hired. Specifically, despite the single reference in paragraph one of the 1985-1986 contract to relator as a "Title VI-B Tutor", the contract is titled "Teacher's Contract Limited" and contains nine additional references to relator as a "teacher". Similarly, the 1986-1987 employment contract contains a single reference to relator as a "tutor" in the caption "Teacher's Contract Limited Tutor - Title VI-B", yet contains nine additional references to relator as a teacher. Thus, on the face of these contracts, it is not clear, for example, whether the reference to relator as a "Title VI-B Tutor" is merely intended as description of the funding source for relator's position or whether the reference is to relator's actual classification in a position not embraced by the duties or responsibilities of a "teacher".

In addressing the issue of contract construction upon a motion for summary judgment, the Supreme Court of Ohio has held that:

"Civ. R. 56(C) provides that summary judgment shall be rendered only if there is 'no genuine issue as to any material fact and * * * moving party is entitled to judgment as a matter of law.' If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. *Alexander* v. *Pipe Line Co.* (1978), 53 Ohio St. 2d 241 [Citation omitted.] However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term. *Hallet & Davis Piano Co.* v. *Starr Piano Co.* (1911), 85 Ohio St. 196." *Inland Refuse Transfer Co.* v. *Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St. 3d 321, 322.

Thus, inasmuch as reasonable minds could differ as to the relator's status under the employment contracts, and therefore as to her rights under the educational employment laws of this state, summary judgment on this issue would be inappropriate for either party. *Id.* at 324. Accordingly, it is Ordered, Adjudged and Decreed that the motions for summary judgment filed by relator and respondents be, and hereby are, denied. However, for the reasons that follow, we find on the evidence before us (submitted pursuant to Loc. R. 2) that relator was a teacher within the meaning of the laws of this state and therefore is entitled to a writ of mandamus directing the board to give her back pay.

Relator has submitted her personal affidavit stating that she was employed by the board as a certified teacher and that she taught seven hours per day in a classroom with students exclusively assigned to her. Relator further stated that she "taught the same number of days each school year as other teachers at the Indian Lake High School."

Respondents have submitted the affidavit of Robert Van Osdol, superintendent of the board. We find the following paragraphs of Osdol's affidavit to be particularly relevant:

"2. The Board has for many years employed tutors to assist students in one-on-one and small group instruction. The Board's records indicate that employment of tutors has always been offered to persons for an hourly wage rate.

"3. The Board provides special education services to qualified pupils in the district pursuant to state and federal regulations governing the education of handicapped pupils. *Included as part of the mandated special education services are the services of tutors who provide assistance to learning disabled pupils, ("L.D. Tutors"). The services provided by those persons are governed by O.A.C. 3301-51-03 (C) which limits the number of pupils who may be served to not more than three during any one class period and which imposes*

*other limitations on the scheduling physical facilities and working environment for such L.D. Tutors.*

"4. *At all times relevant to this action Ms. Tavenner [relator] was employed as a L.D. Tutor by the Respondent Board of Education.* Her services, together with the services of the other L.D. Tutor employed by the Board during those years, was incorporated in the plan for special education submitted to and approved by the State Department of Education * * *."

"18. The funds from which Ms. Tavenner's salary was paid were federal funds called Title VI-B funds which were applied for and administered through the Ohio Department of Education. * * *

"19. During the term of her employment as a tutor, Ms. Tavanner maintained duties different from those that a regular teacher would have performed. *Specifically:*

"a. Ms. Tavanner worked with 1, 2, or 3 students at a time while regular teachers were responsible for classroom management, discipline, and instruction of 22 to 25 students at a time;
"* * *

"d. Ms. Tavenner had no responsibilities to prepare lesson plans while regular teachers were required to file lesson plans complete with objectives for each week's work;

"e. Ms. Tavenner had no responsibilities for student grades while regular teachers were responsible for preparing, administering, and grading quizzes and exams, in addition to grading homework;

"f. Ms. Tavenner had no responsibilities for preparing grades for students while regular teachers were responsible for calculating and averaging grades for each of 22 to 25 students for each grading period;

"g. Ms. Tavenner worked only with special learning disabled students while regular teachers work with all categories of students during the course of a typical school day. [Emphasis added.]"

R. C. 3319.09(A) defines "teacher" as:

"* * * [A]ll persons certified to teach and who are employed in the public schools of this state as instructors * * * or in any other educational position for which the state board of education requires certification including persons having a certificate issued pursuant to sections 3319.22 to 3319.31, inclusive of the Revised Code * * *."

According to Osdol's affidavit, relator was employed as an individual/small group instructor, pursuant to Ohio Adm. Code 3301-51-03(C), which defines her duties as follows:

"(C) Individual/small group instruction
"* * *

"(6) Teacher responsibilities

"(a) The individual/small group teacher will develop instructional objectives on a cooperative basis with the regular classroom teacher, which will enable the handicapped child to participate to the maximum extent possible in the regular education program.

"(b) The individual/small group teacher shall be responsible for teaching prerequisite skills necessary for learning the fundamental concepts of an instructional objective and/or for expanding and reinforcing concepts that are being taught in the regular classroom.

"(c) Because this instruction is to be supplementary in nature, *the individual/small group instruction teacher shall not be responsible for the total instruction of the subject areas, student evaluations, or assignment of grades.*" [Emphasis added.]

In *State, ex rel. Brown,* v. *Milton-Union Exempted Village Bd. of Education* (1988), 40 Ohio St. 3d 21, the Ohio Supreme Court recognized that under the broad definition of "teacher" contained in R.C. 3319.09(A), "tutors" may be considered as "teachers". *Id.* at 22 Moreover, the Medina County Court of Appeals, in *Kehoe* v. *Brunswick Bd. of Edn.* (1983), 24 Ohio App. 3d 51, specifically found a small group instructor of handicapped students under Ohio Adm. Code 3301-51-03 to be a "teacher" within the meaning of R.C. 3319.09(A). *Id.* at 52.

In the instant case, the overwhelming parallels between relator's duties as described in paragraph 19 of Osdol's affidavit and the duties of a small group instructor as defined in the Ohio Adm. Code, together with the language of *Brown, supra* and *Kehoe, supra,* convince us that relator fits the statutory definition of a teacher. Moreover, pursuant to general principles of contract construction, any ambiguity in a written contract must be resolved against the drafter. *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St.2d 77. (We have previously noted the ambiguities in the employment contracts regarding the references to relator as a "tutor" and a "teacher" in the same instrument.) Accordingly, we find that relator was a teacher under R.C. 3319.09(A).

However, we must still determine whether mandamus is the appropriate remedy in this

case. "In order for a writ of mandamus to issue, it must be shown that there is a clear legal right to the relief prayed for, that there is a clear legal duty upon respondent to perform the requested action, and that the relator has no adequate remedy at law." [Citations omitted.] *State, ex rel. Clark*, v. *Greater Cleveland Regional Transit Auth.* (1990), 48 Ohio St. 3d 19.

R.C. 3317.163(B) requires in pertinent part that:

"Each teacher * * * be fully credited with placement in the appropriate academic training level column in the district's salary schedule with years of service properly credited pursuant to this section or section 3317.14 of the Revised Code. *No rule shall be adopted or exercised by any board of education which restricts the placement or the crediting of annual salary increments for any teacher according to the appropriate academic training level column.*" [Emphasis added.]

We have decided that relator was a "teacher" under the laws of this state. It is undisputed that at the time of her employment, relator held a bachelor's degree and had 150 hours of additional training. Under these circumstances, we find that relator has a clear right to the back pay consisting of the difference between the actual hourly wages paid and the salary according to appropriate training level column of the district salary schedule. Further, we find that respondents have a clear legal duty to provide the back pay. Nevertheless, a writ of mandamus will not issue where there is a plain and adequate remedy in the course of law.

Respondents argue that relator failed to exhaust administrative remedies under R.C. 3317.13(B) which would have provided her with a plain and adequate remedy at law. However, the Supreme Court of Ohio has consistently held that "a claim by a public employee of entitlement to wages or benefits which are granted by statute or ordinance is actionable in mandamus." *State, ex rel. Gingrich*, v. *Fairfield City Bd. of Edn.* (1985), 18 Ohio St. 3d 244. Furthermore, in *State, ex. rel Merydith Constr. Co.*, v. *Dean* (1916), 95 Ohio St. 108, 123, the Ohio Supreme Court defined adequate remedy as "* * * one complete in its nature, beneficial and speedy."

In this regard, we note that R.C. 3317.13(B) provides only for an *investigation* of either (1) a failure or refusal to adopt an annual salary schedule or (2) a failure to pay salaries in accordance with the state minimum salary schedule. However, the instant claim does not concern either subject contained in R.C. 3317.13(B). Instead, we are concerned with respondents'

failure to pay relator in accordance with the district's adopted Teachers' Salary Schedule. Therefore we do not find the statute to provide a plain and adequate remedy at law.

Moreover, relator's entitlement to compensation as a teacher, in accordance with the district's duly adopted salary schedule, is established by R.C. 3317.13 and 3317.14. Consequently, inasmuch as the Comprehensive Agreements in this case do not specifically address the question of the classification of special education instructors into a substandard wage category, the respondents are subject to the provisions of R.C. 3317.13 and 3317.14. See R.C. 4117.10(A) and *State, ex rel. Clark, supra.* Therefore, mandamus is the appropriate remedy to compel the award of back pay resulting from respondents' failure to perform their legal duty.

In conclusion, we find that for the 1985-1986 academic year, relator was paid $11,340, but was entitled to an annual salary of $15,500 if she had been placed in the appropriate training level column of the district's salary schedule. Likewise, we find that for the 1986-1987 academic year, relator was paid $12,600, but was entitled to an annual salary of $19,795 if she had been placed in the appropriate training level column of the district's salary schedule. However, in accordance with the holding in *State, ex rel. Parrot* v. *Board of Public Works* (1881), 36 Ohio St. 409, we deny relator's prayer for post judgment interest.[1] See, also, *Lewis* v. *Benson* (1979, 60 Ohio St. 2d 66.

It is therefore ORDERED, ADJUDGED and DECREED that a writ of mandamus now issue from this Court directing the respondents to pay relator back compensation of $11,355, said amount to be adjusted in accordance with the provisions of R.C. 3307.51, mandating the payment of respective contributions by relator and respondent into the State Teachers Retirement System.

It is further ORDERED, ADJUDGED and DECREED that the costs of this action be and they hereby are, assessed to the respondents for which costs judgment is hereby rendered in favor of relator and execution hereby awarded.

It is also ORDERED that the Clerk of this Court forthwith issue the writ of mandamus heretofore awarded, and forthwith issue the execution of the judgment for costs so ordered, adjudged and decreed.

*Writ issued.*

[1] Paragraph four of the syllabus in *State, ex rel. Parrot, supra* states that, "[i]n the absence of a statute requiring it, or a promise to pay it, interest cannot be adjudged against the state for delay in the payment of money."