OPINION 
This matter presents timely appeals from two separate January 23, 1997 orders rendered by the Stark County Common Pleas Court. In its first judgment entry, the trial court responded to defendant-appellant-East Canton Education Association's declaratory action by reversing the prior decision of defendant-appellant-Osnaburg Local School District Board of Education, concluding that: (1) plaintiff-appellee, John R. McIntosh, previously obtained tenure status in the Marlington School District; (2) he should be paid as a teacher during the pendency of these actions; (3) he must be offered a continuing contract at such time as a position would be available without dislodging an existing teacher; and (4) until such time as he received and accepted such position, he was not to be included within the present collective bargaining unit and would thereby not be represented by East Canton Education Association. In its second judgment entry, the trial court granted defendant-appellee-Osnaburg's motion for summary judgment as to plaintiff-appellant-McIntosh's breach of contract, defamation and tortious interference claims. Defendant-appellant-East Canton Education Association and defendant-appellant-Osnaburg Local School District Board of Education filed notices of appeal on February 18 and February 24, 1997, case numbers 97-CA-0050 and 97-CA-0060 respectively, from the court's first entry. On February 21, 1997, plaintiff-appellant-McIntosh filed his notice of appeal from the aforementioned second judgment entry of January 23, 1997. This appeal was assigned case number 97-CA-0056.
The background facts of this case are not in issue, as the parties filed Amended Stipulations of Facts on August 6, 1996. According to the facts stipulated, plaintiff-McIntosh (McIntosh) was employed by the Marlington School District as a teacher, then a guidance counselor, under "limited contract" from the 1966-1967 through the 1974-1975 school years. On April 8, 1975, the Marlington School Board voted to offer McIntosh employment under "continuing contract" (tenure). That no written offer, acceptance or contract was ever executed regarding the "continuing contract" is not disputed. On June 10, 1975, however, Marlington offered McIntosh an administrative position as assistant principal within the district. McIntosh subsequently accepted this position and was employed as an assistant principal under a limited administrative contract within the Marlington School District from 1975 through 1981, and as a principal from 1981 through 1987.
McIntosh accepted a position as assistant principal in the Osnaburg School District at the beginning of the 1987-1988 school year, continuing in this capacity until 1990. From 1990 until 1995, McIntosh was employed as a principal in the Osnaburg School District. In March 1995, defendant-Osnaburg voted to not renew his administrative contract. Osnaburg subsequently hired a new high school social studies teacher to fill a then-existing vacancy, rather than offer the position to McIntosh, who held a lifetime seventh through twelfth grade comprehensive social studies teaching certificate.
McIntosh filed a seven count complaint against defendant-Osnaburg Local School District Board of Education (Osnaburg) on March 17, 1995. In count one of his complaint, McIntosh sought declaratory relief, requesting that the court find: (1) Osnaburg's termination proceedings violated Ohio's open-hearing requirements; and (2) McIntosh had in fact attained tenure status. In count two, McIntosh sought a writ of mandamus for reinstatement, and in count five, he sought injunctive relief. Counts three, six and seven addressed the issues of breach of contract, defamation and tortious interference with contract, respectively. In count four, appellant asserted a due process violation with respect to the termination/non-renewal process.
On April 4, 1995, the Fifth District Appeals Court (Ninth District sitting by assignment) reversed the trial court's decision as to count one, holding that Osnaburg did not violate Ohio's sunshine laws.
On November 7, 1995 the trial court filed a judgment entry ordering McIntosh's reinstatement as a teacher at an annual salary of $37,657, together with appropriate benefits, to be paid during the pendency of the proceedings.
On December 22, 1995, defendant-appellant, East Canton Education Association (ECEA), filed a declaratory action, requesting the court to make a determination as to whether McIntosh had in fact attained "tenure" status. ECEA joined Osnaburg as defendant for the purpose of ensuring that they would be bound by the court's decision regarding this issue. McIntosh filed a counterclaim for defamation against ECEA, joining Mary Jane Slick of the OEA and Susan Griffith of the ECEA, individually and in their representative capacities, as third party defendants. The trial court consolidated these actions with McIntosh's initial complaint.
On January 23, 1997, the trial court filed the above referenced two separate entries with respect to these matters. These appeals followed.
Since appellant-ECEA's sole assignment of error and appellant-Osnaburg's first assignment of error are substantively the same, they will be addressed together. ECEA's first assignment of error provides:
 "The trial court erred in concluding that appellee obtained continuing contract status in the Marlington Local School District and, therefore, was eligible for continuing contract status as a teacher in the Osnaburg Local School District."
Osnaburg's first assignment of error provides:
 "The trial court erred in its judgment entry of January 23, 1997 when it concluded that appellee McIntosh obtained continuing contract status in the Marlington School District."
The issue in the present matter is whether McIntosh, upon the non-renewal of his administrative contract by the Osnaburg School Board at the end of the 1994-1995 school year, was entitled to a continuing service teaching contract in Osnaburg by virtue of having previously attained continuing contract status in the Marlington School District. This issue can only be reached upon a determination of whether McIntosh in fact attained continuing service status as a teacher when the Marlington School Board voted to offer him such status on April 8, 1975. If it is determined that McIntosh attained such status, we must next determine if he subsequently waived his statutory right of continuing service by accepting the limited administrative contract offered by the Marlington School Board on June 10, 1975. If it is determined that McIntosh had attained continuing contract status in Marlington and had not waived such status by subsequently accepting the administrative contract, we must finally determine whether such status transferred to Osnaburg, and if so, whether McIntosh was automatically entitled to a continuing contract in that district as an operation of law subsequent to Osnaburg's non-renewal of his administrative contract.
The parties do not dispute that McIntosh was statutorily "eligible" for continuing contract status in 1975, nor that the Marlington School Board in fact voted, upon recommendation of the superintendent, to offer such status to McIntosh. Appellants' assertion that McIntosh did not affirmatively accept the continuing status offer is not disputed. The primary focus of appellants' challenge regards the court's reliance on the "presumptive acceptance" provision of the 1996 version of R.C.3319.11, instead of the version in effect at the time of the Marlington School Board action in 1975. As such, they contend that McIntosh's circumstances did not meet the requirements of the "distinct factual scenarios" set forth in the latter portion of the statute, thereby rendering the "presumptive acceptance" provisions inapplicable. Upon review of the respective versions of R.C. 3319.11, we conclude that application of either version would lead to the same result, as the presumption exists under each version.
The pertinent portion of the 1975 version of R.C.3319.11 provides:
 "Upon the recommendation of the superintendent that a teacher eligible for continuing status be re-employed, a continuing contract shall be entered into between the board and such teacher unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent. The superintendent may recommend re-employment of such teacher, if continuing status has not previously been attained elsewhere, under a limited contract for not to exceed two years * * * If the board of education does not give such teacher written notice of its action on the superintendent's recommendation of a limited contract for not to exceed two years before the thirtieth day of April, such teacher is deemed re-employed under a continuing contract at the same salary plus any increment provided by the salary schedule. Such teacher is presumed to have accepted employment under such continuing contract unless he notifies the board in writing to the contrary on or before the first day of June, and a continuing contract shall be executed accordingly."
The remaining portion of this version of R.C. 3319.11
addresses three factual scenarios which are clearly only implicated upon written notice being provided to the eligible teacher of the board's intention to not offer a continuing contract pursuant to a recommendation by the superintendent or by vote of the board rejecting the superintendent's recommendation to offer such a contract. Only upon such expressed affirmative conduct will a teacher be presumed to accept (1)re-employment under additional limited contract; (2) re-employment under continuing contract after completion of probationary period under extended limited contract; or (3) re-employment under limited contract for a teacher ineligible for continuing status.
Pursuant to this version of R.C. 3319.11, it is clear that once a teacher has become eligible for continuing teacher status by virtue of certification and years of teaching in the district, or years of service if eligibility was attained in another district, (s)he is entitled to a continuing teaching contract unless the superintendent or the board takes affirmative action to the contrary and provides the teacher with written notice of this contrary intent. Where the board fails to adhere to these clearly defined procedural requirements, it iscompelled_to enter into a continuing teaching contract with the teacher upon determining such teacher has attained eligibility. Absent a written declination of the continuing teaching contract offer by a teacher who has attained eligibility, it is presumed that the eligible teacher has accepted such an offer, regardless of whether the offer has been set to writing or otherwise formalized by the board.
The 1996 version of R.C. 3319.11(B)(1), upon which appellants assert the trial court improperly relied, in part provides:
 "Upon the recommendation of the superintendent that a teacher eligible for continuing service status be reemployed, a continuing contract shall be entered into between the board and the teacher unless the board by a three-fourths vote of its full membership rejects the recommendation of the superintendent. If the board rejects by a three-fourths vote of its full membership the recommendation of the superintendent that a teacher eligible for continuing service status be reemployed and the superintendent makes no recommendation to the board pursuant to division (C) of this section [extended limited contract for not more than two years, where any subsequent reemployment of teacher would be by continuing service contract], the board may declare its intention to not reemploy the teacher by giving the teacher written notice on or before the thirtieth day of April of its intention not to reemploy the teacher. If evaluation procedures have not been complied with pursuant to division (A) of section 3319.111[3319.11.1] of the Revised Code or the board does not give the teacher written notice on or before the thirtieth day of April of its intention not to reemploy the teacher, the teacher is deemed reemployed under an extended limited contract for a term not to exceed one year at the same salary plus any increment provided by the salary schedule. The teacher is presumed to have accepted employment under the extended limited contract for a term not to exceed one year unless the teacher notifies the board in writing to the contrary on or before the first day of June, and an extended limited contract for a term not to exceed one year shall be executed accordingly. Upon any subsequent reemployment of the teacher only a continuing contract may be entered into."
Short of more clearly defining the options available to the superintendent and the board in the event they desire to take the affirmative procedural steps necessary to deny a continuing contract to an eligible teacher, we cannot conclude that this version of R.C. 3319.11 in any way increases or erodes a teacher's rights to such a contract, nor does it increase or decrease the board's affirmative duties within this context. Simply put, if the superintendent or board do nothing, the eligible teacher is entitled to a continuing teaching contract, and is presumed to accept such contract absent written declination thereof. If the superintendent recommends to not reemploy the eligible teacher, and the board concurs, written notice of such must be provided to the teacher. The same is true if the board disagrees with the superintendent's recommendation to reemploy, whether under a limited or continuing contract.
Under either version of R.C. 3319.11, once a teacher attains eligibility for continuing contract status, the board is compelled to offer such a contract unless it takes the affirmative procedural steps to either deny reemployment or offer reemployment pursuant to a limited contract. To attain eligibility in a district, a teacher must be certified and either have taught in that district for three of the last five years or, if continuing teaching status had been previously attained in another district, have served_within the second district for two years. Absent providing the eligible teacher with written notice of an intent to not reemploy or reemploy under a limited or extended limited contract, R.C. 3319.11 states that a continuing teaching contractshall_be offered to eligible teachers. This is not discretionary language.
Upon a review of the record and for the reasons set forth above, we must agree with appellee-McIntosh that he was eligible for continuing service status with Marlington in 1975, that the Marlington School Board voted to offer him such status, and that by not affirmatively rejecting the offer prior to June 1 1975, he was deemed to have presumptively accepted the offer of such status on that date, regardless of which version of R.C.3319.11 is applied. By requiring a teacher to present a written rejection of such an offer prior to a fixed date (June 1), the legislature has clearly placed the burden of all affirmative acts in such a matter on the school boards. Because the language of R.C. 3319.11 entitles an eligible teacher the continuing contract status, it is incomprehensible to imagine a circumstance where an eligible teacher would be inclined to reject such a valuable lifetime property interest. It would be illogical to construe the statute in such a manner that would subject the teacher to forfeiture of continuing teacher status for failure to affirmatively act upon the obvious. It is therefore our conclusion that McIntosh had in fact attained continuing teaching status in the Marlington School District in 1975.
The next issue we address is whether McIntosh waived this status by subsequently accepting a limited administrative contract in Marlington. Appellee contends that even upon acceptance of the subsequent limited administrative contract, he retained his continuing service status pursuant to R.C.3319.02(C), which provides:
 "When a teacher with continuing service status becomes an assistant superintendent, principal, assistant principal, or other administrator with the district or service center with which he holds continuing service status, he retains such status in his non-administrative position as provided in sections 3319.08 and 3319.09 of the Revised Code."
The parties agree that McIntosh was eligible for continuing contract status in Marlington and that he was offered such a contract by the Marlington School Board. Appellants assert, however, that McIntosh's acceptance of the administrative contract, subsequent to the boards vote to offer him continuing service status, served as a rejection of that offer, thereby waiving his statutory rights to that status. Appellants contend that even if the court properly construed the "presumptive acceptance" provision as being applicable and dispositive to McIntosh's acceptance of continuing service status, his subsequent execution of the administrative contract with the same party served to waive the prior teaching contract. Helle v Landmark,Inc. (1984), 15 Ohio App.3d 1. We disagree.
In support of this argument, appellants cite to State,ex rel. Johnston v Cincinnati Board of Education (1979), 64 Ohio App.2d 146, where the court held that a teacher otherwise entitled to automatic reemployment under 3319.11 had waived his right to the statutorily required one year contract by subsequently accepting a one month teaching contract with the same board, reasoning that the contracts were "patently different".
Appellants also cite to Kehoe v Brunswick City SchoolDistrict Bd. of Edn. (1983), 24 Ohio App.3d 51, where the court held that a tutor who subsequently signed an alternative employment contract as a substitute teacher with the same board was deemed to have waived her statutory right to have her tutoring contract renewed, since she could not be both tutor and substitute teacher.
Finally, appellants cite to State, ex rel. Davis vMeister (May 2, 1984), Summit App. No. 11463, unreported, where the court held that an individual who served in several administrative capacities and who had become eligible for, but never attained, continuing service status while in these capacities, was not entitled to be offered a continuing teaching contract upon the non-renewal of his limited administrative contract. The Court of Appeals concluded that Davis, who held a continuing service contract with one district, but who subsequently entered into a limited administrative contract in another district, though eligible for continuing service by virtue of having been certified, did not attain continuing service status in the second district because he never held a position in which he was eligible for a continuing contract in that district. Concluding that Davis' acceptance of the limited administrative contracts prevented his eligibility from developing into a continuing contract by operation of law, the appellate court specifically addressed and rejected Davis' assertion that this eligibility automatically matured into a continuing teacher contract upon non-renewal of his contract as principal.
Johnston and Kehoe, supra, are distinguished from the present case since neither of those cases dealt with a teacher who was granted continuing service status prior to accepting an administrative post. It is our opinion that State, ex rel. Kellyv Bd. of Ed. of Clearcreek Local School District (1990), 52 Ohio St.3d 93, decided after Johnston, Kehoe and Davis, is more representative of the Ohio Supreme Court's current position on the issues herein. In Kelly, the Court determined that pursuant to R.C. 3319.11(B), a certified teacher, who attained continuing service status in one school district, and who had served at least two years as an administrator in a second school district, was entitled to a continuing service contract as a teacher in the second school district upon non-renewal of the administrative contract. It is important to note that the Court of Appeals for Warren County found its judgment in Kelly in conflict with that of the Court of Appeals for Summit County in Davis. In affirming the judgment of the court of appeals in Kelly, the Supreme Court expressly rejected the decision rendered by the Summit County Court of Appeals in Davis.
Based upon the Ohio Supreme Court's opinion in Kelly and our review of the language of R.C. 3319.02(Employment of administrators, supervisors, and special teachers) we must accept the premise that it is the clear intent of the state legislature to allow teachers to accept administrative positions without jeopardizing their continuing service status as teachers.
Appellants' assertion that McIntosh subsequently waived his right to continuing service status upon accepting the administrative position is unfounded and contrary to the Supreme Court's construction of the applicable statutes as set forth inKelly, supra. In the present matter, such a requirement would have required McIntosh to accept the continuing service contract as a teacher, begin the 1975-1976 school year as a teacher under a continuing service contract, and then accept the administrative contract once the school year had begun. Though not determinative to our conclusions herein, it appears that McIntosh did not in fact execute the limited teacher's contract for the administrative post until September 2, 1975. (Appellant-Osnaburg's brief, App. 31). Since the 1975-1976 school year statutorily begins on July 1, and no evidence was presented to show that McIntosh rejected the offer prior to June 1, it would appear that McIntosh in fact did begin the 1975-1976 school year under the continuing service contract. For these reasons, we conclude that McIntosh did not waive his continuing teaching status upon subsequently accepting the limited administrative contract.
Having determined that McIntosh had in fact attained, and did not subsequently waive, continuing teaching status in Marlington, we must now address the central issue presented in this case as to whether McIntosh was, by virtue of this status, entitled to a continuing teaching contract in the Osnaburg School District upon the non-renewal of his administrative contract at the end of the 1994-95 school year. Though an eligible teacher is statutorily entitled to such status, the Ohio Revised Code neither expressly nor impliedly indicates any presumption of eligibility. In recognition of the State's commitment to quality education, as well as the value continuing contract status bestows upon a teacher, we are constrained to conclude the legislature intended that a continuing teaching contract cannot arise until such time as the board has made a determination as to the teacher's eligibility pursuant to the statutory requirements of R.C. 3319.08
and R.C. 3319.11.
We therefore conclude that when a teacher acquires continuing contract status in a district other than the one in which a continuing contract is now being sought, such continuing contract status in the new district does not arise by mere operation of law, but only upon subsequent affirmative conduct by the teacher notifying the school board in which (s)he seeks continuing contract status as to his/her eligibility for such status and upon a positive determination of eligibility by such school board. In other words, the school board will only be bound to offer a continuing contract to such a teacher, pursuant to the mandatory provisions of R.C. 3319.11, upon receiving such affirmative notice and upon determining that the teacher is in fact statutorily eligible for such status.
In the present matter, the Osnaburg School District made a determination, based upon their interpretation of state law, that McIntosh was not eligible for continuing contract status in that district. Based upon the mobility of today's workforce, and as a matter of practicality, we cannot conclude that the state legislature intended to place the entire affirmative burden of discerning whether McIntosh had satisfied his statutorily required teaching requirements in another school district upon Osnaburg. As it is uncontested that McIntosh never held a teaching contract in Osnaburg, and the Revised Code neither expresses nor implies any legislative intent that such qualifications be presumed, we do not find Osnaburg's determination of ineligibility unreasonable under the specific circumstances of this case. We conclude that Osnaburg was not bound by the mandatory provisions of R.C. 3319.11
to offer McIntosh a continuing contract absent provision of sufficient evidence to determine McIntosh was in fact eligible for such status. However, once the trial court determined as a matter of law that McIntosh was eligible for continuing contract status upon non-renewal of his administrative contract, we conclude that the trial court properly applied the mandatory provisions of the statute retroactively to the beginning of the 1995-96 school year.
For these reasons we overrule appellant-ECEA's and appellant-Osnaburg's first assignments of error and affirm the decision of the trial court.
Appellant-Osnaburg's second assignment of error provides:
 "Even if appellee McIntosh has obtained a continuing contract of employment as a regular teacher in the Osnaburg Local School District, the trial court erred in ordering appellant board of education to pay appellee full compensation and benefits since July of 1995 while failing to place appellee within the bargaining unit of teaching employees and failing to subject appellee to the collective bargaining agreement until the 1997-98 school year."
Neither state law nor the collective bargaining agreement at issue in the present matter requires a teacher to be a member of the collective bargaining unit. Article VII of the collective bargaining agreement provides in pertinent part that, "The Board shall deduct from the pay of members of the collective bargaining unit who elect not to become or to remain members of the Association. . . ." [Emphasis added]. We can but conclude from this language that the parties to this bargaining agreement contemplated the possibility that certain members of the bargaining unit would not be members of the bargaining association. It is also our opinion that until such time as McIntosh is provided a teaching position within the district, his community of interest with members of the unit is sufficiently distinct to justify temporary exclusion.
Based upon our review of the record, we must conclude that the trial court's decision to exclude McIntosh from the collective bargaining agreement was justified and proper due to the amendment of Article XIX of the agreement, made after McIntosh brought this action and shortly before the court's decision to reinstate him. That amendment provides that an employee who's administrative contract is not renewed could not be reemployed as a teacher if such employment would cause the displacement of a teacher with less seniority. In light of the pervasive animus reflected throughout these proceedings, we are inclined to accept the proposition that this amendment was made in anticipation of, and in an effort to thwart, the court's order. Though the decision of the trial court may in fact be unprecedented, we find no merit in appellants' argument that such a decision in any way usurps the ability of the employer to determine the terms and conditions of employment.
Appellant has presented no evidence or referenced any statute requiring membership in the collective bargaining unit, nor of the financial burden an order of reinstatement would cause to the district. Appellee's discussion of the court's purpose for excluding McIntosh from the bargaining agreement is well founded. For these reasons it does not appear that the trial court erred in its decision.
Appellant's second assignment of error is without merit and is overruled.
Appellant-Osnaburg's third assignment of error provides:
 "The trial court erred in determining appellee McIntosh is to be compensated as a teacher by the Osnaburg Local School District in the amount of $37,657."
Appellant contends that since McIntosh's administrative contract expired at the end of the 1994-1995 school year (June 30, 1995), any compensation due during court proceedings should be based on the teacher's pay scale, commensurate with his level of experience, and not an administrative pay scale.
R.C. 3317.14 requires individual school districts to establish annual teachers' salary schedules. These schedules must provide that no teacher receive less than the minimum pay set forth in R.C. 3317.13 and be provided with full credit for a minimum of five years of actual teaching experience. Pursuant to R.C. 3317.13, a "new" teacher in a district shall not be credited for more than ten years experience. Under the schedule set forth in R.C. 3317.13, a teacher with McIntosh's level of experience (Masters + 10) would be entitled to a minimum salary of $26,775 annually.
Greco v Roper (1945), 145 Ohio St. 243 grants broad statutory powers to a school board in the conduct and management of their school district. Within these broad powers is discretion in classifying a teacher within applicable salary schedules. Since McIntosh never taught in the Osnaburg School District, we would be inclined to agree that it was within appellants' discretion to determine his compensation level as that of a "new" teacher within the district.
Article XXI of the collective bargaining agreement sets forth Osnaburg's schedule pursuant to R.C. 3317.14. Under Article XXI, a teacher with McIntosh's credentials (Masters + 15 hours) granted the statutory minimum of five years of experience, if treated as a "new" teacher to the district, would be entitled to an annual salary of $26,229. Since this figure fell below the statutory minimum as prescribed by R.C. 3317.13, appellant credited McIntosh with six years of experience, thereby placing him at a salary of $27,353 annually.
The record clearly reflects that McIntosh has over twenty-nine years of actual teaching service. Classification of a teacher on the salary schedule is, however, a matter of discretion reserved to the school board, constrained only by the minimums set forth by R.C. 3317.13. R.C. 3317.13(B) only requires that full credit be given "pursuant to this section [3317.13] and section3317.14," not pursuant to a collective bargaining agreement. In consideration of this and the fact that the salary proposed by appellant exceeds the statutory minimum set forth by R.C. 3317.13
for a person of McIntosh's level of experience, we cannot conclude that appellant would be statutorily obligated to give McIntosh full credit for his actual years of service.
Since the issue of McIntosh's reinstatement was a question of law, the trial court properly decided that issue without deference to the Osnaburg Board. The question of where to classify him upon the statutory or collective bargaining salary schedule was, however, an administrative issue expressly delegated by statute to the local board of education. In light of the substantive legal issue at the core of the trial court's order, and the parties' focus upon this issue of law in their arguments, we cannot conclude that Osnaburg waived its administrative authority by failing to simultaneously present its proposal as to the administrative issue.
Having concluded that Osnaburg was not statutorily bound to credit McInstosh for his actual years of service, and that it was within Osnaburg's discretionary authority to classify him as a new teacher within the district, we conclude that Osnaburg's proposal was reasonable and valid, and therefore due deference upon review.
Though the dual nature of the trial court's order precluded Osnaburg from presenting its proposal to the trial court, it was properly brought before this Court. In consideration of the aforementioned legislative intent and in the interests of justice, we therefore modify the trial court's decision so as to comply with the evidence, and set the salary at $27,353.00.
Appellant's third assignment of error is with merit and is modified.
Plaintiff-appellant-McIntosh sets forth two assignments of error in his appeal. The first assignment provides:
 "The trial court erred in summarily dismissing plaintiff McIntosh's defamation claims."
In granting Osnaburg's motion for summary judgment pursuant to Civ. R. 56, the trial court reasoned that the statements made by defendants during the course of these proceedings were absolutely privileged since they were made while executing a governmental function. The court also noted that since McIntosh was responsible for publication of documents related to these proceedings, he was precluded from proving an essential element of defamation as to these documents. Finally, the trial court determined that an open letter to the public published by Osnaburg was a protected expression of opinion, and therefore not subject to a defamation claim.
Civ. R. 56 (C) recites, in pertinent part:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."
As set forth by the Ohio Supreme Court in WelcoIndustries, Inc. v Applied Companies (1993), 67 Ohio St.3d 344,346:
 "Under Civ. R. 56, summary judgment is proper when ` (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgement as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.' (Citation omitted). Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. (Citation omitted). Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essentials of its claim. (Citation omitted)."
The Ohio Supreme Court in Dresher v Burt (1996), 75 Ohio St.3d 280,293 held:
 "The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ. R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims."
The Ohio Supreme Court in Dresher, supra, further held that once the moving party has met its initial burden, the nonmoving party must then produce any evidence for which such party bears the burden of production at trial. In reviewing a trial court's decision to grant summary judgment, a court of appeals must conduct a de novo review of the record. Renner vDerin Acquisition Corp. (1996), 111 Ohio App.3d 326.
On August 18, 1997, the Fifth District Court of Appeals (Ninth District sitting on assignment) issued a thirty-nine page decision wherein they determined that the trial court erred in granting the summary judgment motions of ECEA, Slick and Griffith as to three of the six passages set forth in McIntosh's defamation claims against those parties. East Canton Education Association vJohn R. McIntosh v Mary Jo Slick (Aug. 18, 1997), Stark App. No. 97-CA-0293, unreported. In that opinion, the appellate court determined McIntosh was not a public figure, and was therefore not required to prove the element of malice in his defamation claims. The appellate court then proceeded to apply a defamation analysis to each passage referenced in McIntosh's claim. Since the parties herein, Osnaburg and the individual members of the Osnaburg Board, were not a party to that action, the merits of McIntosh's separate and unrelated defamation claims against them were not reached in that appellate review.
In consideration of the appellate court's prior determinations of law in East Canton Education Association, supra,
and upon a thorough review of the record of this case in a light most favorable to the non-moving party, we must conclude that appellees failed to satisfy their burden under Dresher that there were not genuine issues of material fact as to whether statements made during the administrative proceedings were absolutely privileged, whether McIntosh was responsible for the initial publication of documents related to these proceedings and thereby precluded from proving an essential element of defamation, or whether such statements were protected expressions of opinion.
For these reasons, we find appellant-McIntosh's first assignment of error well taken. So as to assure a consistent application of law within the context of the separate defamation claims, we reverse the decision of the trial court and remand the issues set forth in this assignment for the purpose of making factual determinations thereof, within the analytical framework set forth in East Canton Education Association, supra, and consistent with the determinations of law made therein.
Plaintiff-appellant-McIntosh's second assignment of error provides:
 "The trial court erred in dismissing plaintiff McIntosh's breach of contract cause of action."
On January 13, 1997, the Fifth District Court of Appeals (Ninth District sitting on assignment) filed a decision specifically addressing and overruling the arguments of appellant-McIntosh regarding the breach of contract issue relative to the administrative contract. State ex rel. John R. McIntosh v.Osnaburg Local School District (Jan. 13, 1997), Stark App. No. 95-CA-0357, unreported. Since it is our opinion that the breach of contract issue regarding the administrative contract has been completely and fully litigated on the merits and adequately reviewed at the appellate level, we decline to revisit that issue under the principle of res judicata.
As a separate issue, the trial court sustained Osnaburg's summary judgment motion relative to McIntosh's breach of contract claim regarding the continuing teaching contract, determining that since no continuing teaching contract existed, no breach of contract could have occurred. For the reasons we set forth in addressing appellant-ECEA's sole assignment of error and appellant-Osnaburg's first assignment of error we agree with the trial court. Appellant-McIntosh's second assignment of error is without merit and is overruled.
Appellant-ECEA's sole assignment of error is found to be without merit.
Appellant-Osnaburg's first and second assignments of error are found to be without merit. Appellant-Osnaburg's third assignment of error is with merit.
Appellant-McIntosh's first assignment of error is found to be with merit. Appellant-McIntosh's second assignment of error is found to be without merit.
The judgment of the trial court is reversed and the cause is remanded for further proceedings according to law and consistent with this opinion.
Donofrio, P.J., O'Neill, J.,
APPROVED:
 ______________________________ EDWARD A. COX, JUDGE